# NICHOLAS A. REITER *vs.* STATE OF MARYLAND.

*Food—Statute Prohibiting Sale of Condensed Skimmed Milk.*

Code, Art. 27, Sec.. 235 (Act of 1900, Chap. 532), provides that
no condensed or preserved milk shall be manufactured or
sold unless it be made from pure milk, from which the cream
has not been removed either wholly or in part, nor unless it
contain a designated proportion of milk solids. *Held,* that
this statute prohibits the sale of a product labelled as con-
densed skimmed milk, made from milk from which the
greater part of the cream had been taken, although such prod-
uct, manufactured in this manner, was not known when the
Act of 1900 was passed, and although Code, Art. 27, Sec. 233,
authorizes the sale of skimmed milk when sold as such. The
object of the statute is not to prevent fraud or imposition,
but to prohibit the sale of an article deemed by the Legisla-
ture to be lacking in some of the qualities of healthy food,
and hence it makes no difference that the article is not sold
as condensed milk, but as condensed skimmed milk.

*Decided January 15th, 1909.*

Appeal from the Criminal Court of Baltimore City (Dob-
ler, J.)

The cause was argued before Boyd, C. J., Briscoe,
Pearce, Schmucker, Burke, Thomas, Worthington and
Henry, JJ.

*Arthur Geo. Brown* and *R. E. Lee Marshall,* for the appel-
lant.

*Isaac Lobe Straus, Attorney-General,* and *Eugene O'Dunne,
Deputy State's Attorney* (with whom was *J. Wallace Bryan*
on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

Section 235, of Art. 27 of the Code (Act of 1900, Ch. 532, Sec. 138 F.), provides that "No condensed or preserved milk shall be manufactured, sold or exchanged, or offered or exposed for sale or excharge, unless the same be manufactured from or out of pure, clean, healthy, fresh, unadulterated and wholesome milk from which the cream has not been removed either wholly or in part, or unless the proportion of milk solids of same shall be in quantity the equivalent of twelve and fifty one-hundredths per centum of milk solids in crude milk, and of which mild solids three and fifty one-hundredths per centum shall be butter fats. No person shall manufacture, sell or exchange, or offer or expose for sale or exchange any condensed or preserved milk unless the same be put up, packed or contained in packages with the name of the manufacturer of the said milk distinctly branded or stamped thereon."

The appellant, Nicholas Reiter, of Baltimore City, was indicted under this section of the Code for having unlawfully sold, offered for sale and exposed for sale condensed and preserved milk, which had been manufactured from and out of milk which was not then and there pure, clean, healthy, fresh, unadulterated and wholesome, and from milk from which the cream had been theretofore removed. The indictment contains five counts, charging in different language the same offense, and to this indictment the defendant filed the following plea:

"And now comes the said Nicholas Reiter and says that the State ought not further to prosecute the said indictment nor any one of the counts thereof, and for plea to each of said counts says that he is a citizen of the State of Maryland and a resident of the City of Baltimore, and that he was at the times mentioned in said indictment, since he has been and now is regularly engaged in carrying on wholesale and retail grocery business, in the city aforesaid, under the firm name of Nich. Reiter & Co., said firm being a co-partnership and

composed of the co-partners as follows, to wit: Nicholas Reiter and Ambrose J. Reiter.

"That in the conduct of said business, said firm regularly had and kept in stock, and offered for sale and exposed for sale certain cans marked and labelled in manner and form as follows, to wit:

SKIMMED

SQUARE H BRAND

CONDENSED

MILK.

"That the said cans so marked and labelled as aforesaid contained in a condensed or solid form a certain product of pure cow's milk, commonly known in commerce and in trade as 'skimmed milk condensed' or 'condensed skimmed milk.'

"That the said condensed skimmed milk contained in said cans, as aforesaid, was and is pure skimmed milk from which a considerable portion of the water has been removed by process of evaporation, and the said skimmed milk was and is obtained from pure cows' milk by removing therefrom all, or the greater part of, the cream contained therein.

"That all the milk used to make the skimmed milk so condensed in said cans as aforesaid, was and is pure, clean, healthy, fresh, unadulterated and wholesome milk within the meaning and intent of the laws of the State of Maryland, and in order to produce the said skimmed milk which was and is used to make the condensed skimmed milk manufactured and sold as the 'Square Brand Condensed Skimmed Milk' as aforesaid, the manufacturer and proprietor of said brand merely removed and removes the cream from the aforesaid pure, wholesome and unadulterated milk by a mechanical process and device known as centrifugal separation.

"That after and in consequence of the removal of the cream as aforesaid, a product of milk was and is thereby obtained which was and is recognized and classified as an article of food consumption known and designated as skimmed milk, and the said skimmed milk so produced, as aforesaid,

was and is pure skimmed milk within the meaning and intent of the laws of the State of Maryland.

"That as a necessary result of removing the cream from the said milk, as aforesaid, all or the greater part of the butter fat was and is likewise removed from said milk, so that skimmed milk contains little or no butter fat, and the skimmed milk sold by the traverser as 'Square Brand Condensed Skimmed Milk,' as in said indictment charged, contained not more than one per cent. of butter fat.

"That after obtaining pure skimmed milk by separating and removing the cream from pure milk as aforesaid, the said pure skimmed milk was and is condensed by evaporating therefrom a considerable quantity of its water fluid, and certain proportion of pure cane sugar was and is added thereto for the purpose of preserving and keeping the same pure. That so prepared and produced as aforesaid, the skimmed milk condensed or condensed skimmed milk was and is put up in cans and sold to the trade and to the public generally as 'Square Brand Condensed Skimmed Milk.' That the product of milk commonly known as 'condensed milk' is classified and defined in science and in trade as pure milk from which a considerable quantity of water has been evaporated and to which sugar has been added, and the product of milk known as 'condensed skimmed milk' is classified and defined in Science and in trade as skimmed milk from which a considerable portion of water has been evaporated and to which sugar has been added.

"That the can of condensed skimmed milk sold by the traverser as in said indictment charged was sold by the defendant on the nineteenth day of August, 1908, to Charles Knell, in response to a request for a can of condensed milk square brand, and the contents of said can was condensed skimmed milk manufactured and produced from pure skimmed milk as aforesaid, and plainly and conspicuously labelled and marked as condensed skimmed milk, with letters ranging in size from approximately three-quarters of an inch square to one-half of an inch square, and the skimmed milk

condensed in said can contained the following constituents, to wit: 74.90% of total solids; 1.68% of ash; 12.24% of milk sugar; butter fat less than 1.10 of 1%; proteids, 15.95%; cane sugar, 45.03%.

"That the process of condensing skimmed milk in cans was first perfected and the manufacture and sale of condensed skimmed milk in cans, as an article of commerce and a food product, was first begun in or about the year 1907, and prior to that time skimmed milk was not condensed and preserved for sale in small cans as aforesaid. All of which the said Nicholas Reiter is ready to verify.

"Wherefore the defendant prays judgment and that by the Court here he may be dismissed and discharged from the premises specified and contained in each of the said counts of the indictment."

This plea was demurred to by the State, and the demurrer having been sustained, the traverser pleaded not guilty, was tried, convicted and sentenced to pay a fine of $25.00. The only question presented by the record arises on the ruling of the Court on the demurrer to defendant's plea.

The contention of the appellant is that "condensed skimmed milk," manufactured as set out in the plea, is a definite and distinct product of milk, and so recognized and classified in science and trade; that it is a valuable food product which was not known when the Act of 1900 was passed, and that it is therefore not covered by Section 235 of the Code.

The plea admits that the condensed skimmed milk sold by the appellant was manufactured from milk from which the greater part of the cream had been removed, but the appellant insists that it is only the manufacture of condensed *milk* from milk from which the cream has been removed that is prohibited by the statute, and not condensed *skimmed milk,* as that product was not known at the time of the passage of the Act.

A glance at Section 235 shows that the intention of the Legislature was not only to prevent fraud and deception from being practiced on consumers of condensed milk, by prohibit-

ing the sale of any product of milk, not manufactured from milk of the quality required, under the name of condensed milk, but to absolutely prohibit the sale of condensed milk manufactured out of milk not possessing all the qualities required by the statute. This section does not say that condensed milk of the kind prohibited shall not be sold *unless* marked and branded as provided, but requires, as one of the means of preventing the sale of condensed milk prohibited by the section, that it shall be packed in the way provided, with the name of the manufacturer stamped thereon. In other words, the primary object of this legislation was not to prevent fraud and imposition, but to prohibit the sale of an article deemed by the Legislature either injurious to health, or lacking some of the qualities of healthy food.

If the language of the Act is broad enough to include condensed skimmed milk, there is no force in the contention that the Legislature could not have intended the Act to apply to condensed skimmed milk simply because it is an article of food not then known, as the Legislature may unwittingly have prohibited the sale of an article of which it had no knowledge, or have purposely included in the prohibition an article known to it, but as to the value of which as an article of food, it was not then fully advised.

It would seem, however, from the other legislation in reference to the sale of milk that the Legislature treated the regulations in regard to milk as including skimmed milk. Sec. 233 of the Code, after declaring what milk shall be deemed sophisticated, adulterated or unwholesome, including milk "from which a portion of the cream has been taken," provides "but nothing in these sections shall be construed as prohibiting the addition of sugar in the manufacture of condensed or preserved milk, or to prohibit the sale of pure skimmed milk, when sold as such, and from cans plainly and conspicuously marked with sign or placard 'Skimmed Milk' in capital letters each of a size not less than one inch square." The obvious meaning of that section is that milk from which a portion of the cream has been taken, or skimmed milk, is

"sophisticated, adulterated or unwholesome" milk, and cannot be sold except in the way provided by the section. So when, by Sec. 235, the Legislature provided that no condensed or preserved milk should be manufactured or sold, unless the same be manufactured from milk "from which the cream has not been removed either wholly or in part," it meant that no condensed or preserved milk, manufactured from *skimmed milk* should be sold, etc.

Now the plea admits that the article sold, called "condensed skimmed milk," was manufactured from milk from which the cream had been removed, or from skimmed milk, and unless we hold that the sole purpose of Sec. 235 was to prevent fraud and imposition upon the consumers of condensed milk, by the sale of other articles or products under the name of condensed milk, and that the Legislature did not intend to prevent the sale of articles manufactured from impure or unwholesome milk unless labelled and sold as condensed milk, it seems that the condensed skimmed milk offered for sale and sold by the appellant, clearly falls within the prohibition of the Statute, the plain object of which was, in connection with Secs. 232, 233 and 234, to prevent the sale of impure and unwholesome milk, including skimmed milk, whether sold as liquid milk or condensed milk, unless sold under the restrictions specially provided.

It is true that, in one sense, condensed *skimmed milk* is not *condensed milk,* nor is *skimmed milk,* in the same sense, *milk,* but it would require a narrow and unreasonable construction of these several sections of the Code, to hold that while they declare skimmed milk, that is, milk from which the cream has been taken, *impure milk,* and prohibit the sale of it except under the conditions provided, yet by taking a "considerable quantity of water fluid" from it, and adding to it cane sugar, it can be sold *without any restrictions whatever,* notwithstanding the express provision that no condensed milk shall be sold that is manufactured from *milk from which the cream has been removed.*

That the term "milk" may include in its general meaning milk that is not of the quality required by the Code, is illustrated in Sec. 233, where milk from which the cream has been taken, that is skimmed milk, is excepted, and allowed to be sold in a certain way.

In the case of *Commonwealth* v. *Gordon,* 159 Mass. 8, 33 N. E. Rep. 709, the Court held that "The word 'milk,' in *Pub. St.,* c. 57, 'of the inspection and sale of milk,' is shown by Section 71 to include milk from which no part of the cream has been removed, and we are of opinion that it is used as a general name, and in a sense broad enough to include cream. The offense, under Section 5, of having in one's possession, with intent to sell, milk to which a foreign subject has been added, is committed by having with that intent cream to which boracic acid has been added." 1 *Cyc.* 945, *Note* 25.

In the case of *Commonwealth* v. *Smith,* 149 Mass. 9, 20 N. E. Rep. 161, the Court said: "The complaint is for selling milk not of the standard quality of pure milk; that is, milk containing less than thirteen per cent. of milk solids. The defendant had a right to sell skimmed milk, which is not of the standard quality of pure milk, from cans marked in a certain manner. If he sold milk not of the standard quality of pure milk, and not sold as skimmed milk from duly-marked vessels, he would be liable on this complaint."

Under a statute declaring that milk from which the cream has been removed is impure milk, and prohibiting the sale of impure milk, it would not be a sufficient answer to the charge of violating the statute, to say that the article sold was skimmed milk; so under the sections of the Code referred to, prohibiting the sale of impure condensed milk, that is condensed milk manufactured from milk from which the cream has been removed, as indictment charging the sale of impure condensed milk cannot be effectively met by the plea that the article sold was *"condensed skimmed milk."*

We cannot, therefore, accept the view earnestly pressed by the learned counsel for the appellant, but, concurring in the conclusions reached by the Court below, must affirm the judgment.

*Judgment affirmed with costs.*