## HEBE CO. et al. v. CALVERT et al.

(District Court, S. D. Ohio, E. D. Nov. 21, 1917.)

### No. 72.

1. COURTS ⬯101—NUMBER OF JUDGES SITTING—INJUNCTION.

Under Judicial Code, § 266 (Act March 3, 1911, c. 231, 36 Stat. 1162 [Comp. St. 1916, § 1243]), the presence of three judges is necessary to the hearing of a bill for injunctive relief against the enforcement by state officers of a state statute alleged to be unconstitutional.

2. COURTS ⬯308—FEDERAL COURTS—INJUNCTION.

Where the amount involved is above the jurisdictional amount, the federal courts can take jurisdiction invoked on account of diversity of citizenship to enjoin the enforcement of an unconstitutional state statute.

3. FOOD ⬯1—ACTS—PURPOSE.

One of the purposes of the several Ohio acts relating to food and drugs and to dairy products is to prevent deception in their sale to consumers and conserve the public health.

4. COURTS ⬯366(1)—PRECEDENTS—BINDING PRECEDENTS.

The construction given to state acts relating to food and drugs and dairy products by the highest state tribunal is binding on the federal courts.

5. FOOD ⬯2—STATUTES—LEGISLATIVE QUESTION—"SKIMMED MILK"—"FOOD"—"ADULTERATE"—"MISBRAND."

Gen. Code Ohio, § 5774, provides that no person shall manufacture, offer for sale, sell, or deliver, or have in his possession with intent to sell, or deliver, any article of food, which is adulterated or misbranded. Section 5775 declares that a compound article is a "food" if used by man as such, while section 5778 declares that a food is "adulterated" if a valuable or necessary constituent or ingredient has been wholly or in part abstracted; section 5785 declaring that it is "misbranded" if it is labeled so as to deceive or mislead the purchaser, or if the label bears a statement regarding such food which is false or misleading, but that the section shall not apply to mixtures or compounds recognized as ordinary articles or ingredients of articles of food or drink if the label state the percentage of each ingredient. Section 12716 declares milk to be standard or unadulterated if it contains not more than 88 per cent. of water fluid, while subsequent sections denounce the offense of selling adulterated milk, although section 12720 permits the sale of skimmed milk as such, while section 12725 provides that whoever manufactures, sells, exchanges, exposes, or offers for sale or exchange condensed milk unless it has been made from pure, clean, fresh, healthy, unadulterated and wholesome milk from which the cream has not been removed, shall be punished. *Held,* that the statutes in their applicability to a compound article made by condensing "skimmed milk," which is milk from which the cream has been taken in whole or in part, and the addition of cocoanut oil, cannot be held invalid, the question being for the Legislature, where it was debatable whether such article was as nutritious as condensed milk made from unskimmed milk, this being particularly true where the compound lent itself and was often sold for regular condensed milk made of unskimmed milk.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Adulterate; Food; Misbrand; Skimmed Milk.]

6. CONSTITUTIONAL LAW ⬯70(3)—PROVINCE OF COURT—WISDOM OF STATUTE.

In such case, the courts have no concern with the wisdom of such statutes, and the Legislature cannot be held to have transcended its

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

powers; the statutes having a substantial relation to a proper purpose, the protection of public health, and the prevention of deception in the sale of dairy products.

7. FOOD ⬡➡2—STATUTES—CONSTRUCTION—VALIDITY.

Gen. Code Ohio, § 12725, prohibiting the manufacture and sale of condensed milk unless made from unskimmed milk, cannot be held invalid because the product made by condensing skimmed milk and adding cocoanut oil was not known at the time of its enactment, on the theory that the Legislature might have unwittingly prohibited the sale of an article of which it had no knowledge.

8. FOOD ⬡➡2—STATUTES—VALIDITY.

Such statute, being intended to protect public health and prevent deception in the sale of condensed milk and being regulatory and not prohibitive, is not invalid under the state or federal Constitutions.

9. COMMERCE ⬡➡12—INTERSTATE COMMERCE—BURDEN UPON.

As National Pure Food and Drugs Act June 30, 1906, c. 3915, §§ 7, 8, 34 Stat. 769, 771 (Comp. St. 1916, §§ 8723, 8724), does not purport to declare that an article of food whose transportation in interstate commerce is allowed may be sold in a state to which it is shipped if it is susceptible of use and is used as a means of deceiving customers, and as the constitutional provision giving Congress the right to regulate interstate commerce does not deprive the states of their power to pass under their police power legislation to protect their citizens, hence, though the labels on the tins containing defendant's product made by condensing skimmed milk and adding cocoanut oil, shipped to Ohio in interstate commerce, stated the nature of the article, the percentages of vegetable oils and solids, and were sufficient under the national act, yet as it was advertised even on the labels for the same purposes as condensed milk and sold as such, purchasers being deceived, Gen. Code Ohio, § 12725, forbidding manufacture and sale of condensed milk made from anything but wholesome milk from which the cream has not been removed, is valid and enforceable.

10. CONSTITUTIONAL LAW ⬡➡296(1)—DUE PROCESS OF LAW—STATUTES.

Gen. Code Ohio, § 12725, forbidding the manufacture and sale of condensed milk unless it be made from unadulterated milk from which the butter fat has not been removed, is not, because it recognizes the principle of equality among those engaged in condensing milk, in violation of Const. U. S. Amend. 14, as depriving one manufacturing a product from skimmed milk and cocoanut oil of his property without due process of law; the statute not being unreasonable or arbitrary.

In Equity. Bill by the Hebe Company and the Carnation Milk Products Company, corporations, against Thomas L. Calvert, Chief of Division of Dairy and Food of the Board of Agriculture of Ohio, and others. On final hearing. Bill dismissed.

A. T. Seymour, of Columbus, Ohio, and B. B. Davis and Lannen & Hickey, all of Chicago, Ill., for plaintiffs.

L. D. Johnson, Special Counsel of Attorney General, of Urbana, Ohio, and Chas. J. Pretzman, of Columbus, Ohio, for defendants.

Before WARRINGTON, Circuit Judge, and SATER and HOLLISTER, District Judges.

⬡➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SATER, District Judge. Jurisdiction of this case is vested in the court through the presence of federal questions and the diverse citizenship of the parties litigant. Rail & River Coal Co. v. Yaple (D. C.) 214 Fed. 273, 277; Ohio River & W. Ry. Co. v. Dittey (D. C.) 203 Fed. 537, 539, and authorities there cited. Both of the plaintiffs are foreign corporations. The defendants are Calvert, Chief of Division of Dairy and Food of the Board of Agriculture of Ohio, and other officers and agents of such board. The plaintiffs were authorized by Calvert's predecessor in office to sell in Ohio their food product known as "Hebe," if appropriately labeled. One-half of the label adopted and thereafter used is as follows, the remaining half being the same as the portion here shown:

[1, 2] After Calvert entered upon the discharge of his duties, at his instance an opinion was rendered by the state's Attorney General, in which it was held that in view of the provisions of sections 12716, 12717, and 12725, considered in connection with sections 5774 and 5778, Ohio General Code, and the reasoning of Reiter v. State, 109 Md. 235, 71 Atl. 975, "Hebe," whether it be a compound or otherwise, cannot be sold in Ohio because the major part of it is adulterated condensed milk to which a minor constituent (cocoanut oil) has been added and because it is regarded by a large percentage of the public as genuine condensed milk, whereby the public is misled and deceived into its pur-

chase and use for the condensed article made of whole or standard milk. The plaintiffs and their customers were thereupon notified by the defendants that, unless further sales of their product in Ohio be discontinued, prosecutions would follow and the penalties provided by statute would be inflicted on all who should fail to desist. The bill charges that such prosecutions against the plaintiffs and those selling their product, whether they be their wholesalers or their more than 300 retailers, would result in a great multiplicity of suits and would greatly and irreparably injure their business in the state, even if the prosecutions should terminate favorably to the accused. Injunctive relief is sought against the enforcement by the state's officers of the pertinent sections of the state statute, on the ground of their unconstitutionality. The presence of three judges is therefore necessary to a hearing of the case. Section 266, Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1162 [Comp. St. 1916, § 1243]). If the threatened acts of the defendants are in excess of the authority vested in them by law, an action to enjoin them is within the jurisdiction of a federal court, both diverse citizenship and the necessary jurisdictional amount being present. Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764. The issues having been made up, the case was heard on its merits. It is now for decision with reference to the Ohio statutes.

The terms "evaporated" and "condensed," as applied to milk, are, as generally understood, synonymous, and they will for the purposes of this opinion be so regarded. "Hebe" is recognized by the Bureau of Chemistry of the National Department of Agriculture as a compound. Ninety-four per cent. of it is evaporated skimmed milk; the remaining 6 per cent. is cocoanut oil, highly refined and of good quality, which in its properties, as disclosed by the record, more nearly resembles butter fat than any other known substance. The two ingredients are by an undisclosed process so brought together as to remain properly combined until the food product is ready for consumption. There is no claim that the product, or either of its ingredients, is impure or unwholesome. The article is produced in and shipped from Wisconsin by the plaintiffs to jobbers in various states, including Ohio, on orders accepted in the state of Washington, and reaches consumers through retailers who purchase of such jobbers. It is transported in cans which are packed in inclosing, sealed, fiber shipping cases, completely concealing the cans and their labels; each case containing either 48 cans of one pound each or 96 cans of six ounces each. When shipped in carload lots, the shipping cases bear only the name of the consignee and other data appropriate for identification and delivery. When such cases are received by the retailer, he removes the cans and exposes them for sale to his customers. The plaintiffs' position is that their food product, being plainly and fairly labeled in a conspicuous manner, is not within the condemnation of the Ohio statute and may be lawfully sold and offered for sale in such state. It is further claimed that if the Ohio statute, correctly construed, prohibits the sale of

Hebe, a compound composed of two well-known articles of food, each of which is pure, wholesome, and nutritious, it is in that event violative of the Fourteenth Amendment of the federal Constitution, in that: (a) It deprives the plaintiffs of liberty and property without due process of law, and also denies them the equal protection of the law; (b) it does not regulate the sale of Hebe, but arbitrarily, unjustly, unduly, and in a confiscatory manner, discriminates against it and prohibits its distribution and sale, although such article is so conspicuously and correctly labeled as to show its true character, and although the statute permits the sale of uncondensed skimmed milk, if it be labeled skimmed milk; (c) by its denial of the right to sell Hebe in individual tin cans, which cans are labeled as required by the National Food and Drugs Act and are "original packages" in so far as that act is concerned, it conflicts with such act and the regulations made in accordance with it, and unlawfully interferes with the interstate commerce laws of the United States.

[3-7] Chapter 1 of "Part 2, Title 2, Police Regulations," of the Ohio Code, deals with "Adulterations." It provides, inter alia, as follows: No person within the state shall manufacture, offer for sale, sell or deliver, or have in his possession with intent to sell or deliver, any article of food which is adulterated or misbranded within the meaning of such chapter. Section 5774. A compound article is a food, if used by man as such. Section 5775. A food is adulterated, if a valuable or necessary constituent or ingredient has been wholly or in part abstracted from it. Section 5778. It is misbranded, if it is labeled so as to deceive or mislead the purchaser, or if the label on the package containing the food bears a statement regarding such food which is false or misleading in any particular (section 5785), provided, however:

"That this section shall not apply to mixtures or compounds recognized as ordinary articles or ingredients of articles of food or drink, if each package sold or offered for sale is distinctly labeled in words of the English language as mixtures or compounds, with the name and percentage, in terms of one hundred per cent. of each ingredient therein. The word 'compound' or 'mixture' shall be printed in letters and figures not smaller in height or width than one-half of the largest letter upon any label on the package, and the formula shall be printed in letters and figures not smaller in height or width than one-fourth the largest upon any label on the package, and such compound or mixture must not contain an ingredient that is poisonous or injurious to health."

Certain of the provisions of chapter 6, found in "Part 4, Title 1, Felonies and Misdemeanors," and dealing with "Offenses Against Public Health," are also pertinent to the subject-matter under consideration. It declares milk to be standard or unadulterated, if it contains not more than 88 per cent. of watery fluid, and not less than 12 per cent. of solids or 3 per cent. of fats. Section 12716. Whoever sells, exchanges, or delivers, or has in his custody or possession with intent to sell or exchange, or exposes or offers for sale or exchange, adulterated milk, is subject to a fine for his first offense, to a fine or imprisonment for his second offense (section 12717), and to both a fine and imprison-

ment for any subsequent offense (section 12718). In view of section 5778, milk from which the cream or butter fat has been removed, i. e. skimmed milk, is not pure, but is adulterated. Section 12720, however, permits the sale of such milk if conspicuously labeled "Skimmed Milk," notwithstanding the provisions of sections 5774, 5778, 12717, and 12718, and therefore serves as an exempting clause to those sections. By "skimmed milk" is meant milk from which its natural cream has been taken in whole or in part. Commonwealth v. Hufnal, 185 Pa. 376, 380, 39 Atl. 1052. Section 12725 is as follows:

"Whoever manufactures, sells, exchanges, exposes or offers for sale or exchange, condensed milk unless it has been made from pure, clean, fresh, healthy, unadulterated and wholesome milk, from which the cream has not been removed and in which the proportion of milk solids shall be the equivalent of twelve per cent. of milk solids in crude milk, twenty-five per cent. of such solids being fat, and unless the package, can or vessel containing it is distinctly labeled, stamped or marked with its true name, brand, and by whom and under what name made, shall be fined not less than fifty dollars nor more than two hundred dollars, and, for each subsequent offense, shall be fined not less than one hundred dollars nor more than five hundred dollars and imprisoned not less than ten days nor more than ninety days."

Compound foods were first legally recognized by section 2 (now, in so far as pertinent, section 5775) of the Act of March 20, 1884, 81 Ohio Laws, p. 67. Section 12725, in substance, but with some variation in phraseology, originally appeared as section 13 of the supplementary act of May 17, 1886, 83 Ohio Laws, p. 178, entitled, "An act to prevent adulteration of and deception in the sale of dairy products," i. e., cheese, butter, and milk. A perusal of the act shows that its provisions conform to the purpose declared in the enacting clause. When the Legislature came to the enactment of section 13 for the purpose of regulating the manufacture and sale of condensed milk, it knew that within legal limitations compound foods were permissible, and recognized, as appears by necessary implication from the section itself, that an article might, as the law then stood, be made and marketed as condensed milk (if such had not already been done), which was not made from whole or natural milk. It declared, to the exclusion of skimmed or any other form of adulterated milk and of any and all mixtures and compounds in which such milk is an ingredient, that there should be but one kind of condensed milk, and that it should be made of pure, clean, fresh, healthy, unadulterated, wholesome standard milk. Its purpose is to secure to the population, adult and infant, wholesome condensed milk of a certain standard of strength and purity. It is the conception of the law that condensed milk made from milk below the prescribed standard is not wholesome.

One of the purposes of the several acts relating to foods and drugs and to dairy products is to prevent deception in their sale to consumers and to preserve the public health. State v. Capital City Dairy Co., 62 Ohio St. 350, 57 N. E. 62, 57 L. R. A. 181; State v. Hutchinson, 56 Ohio St. 82, 46 N. E. 71; Arbuckle v. Blackburn, 113 Fed. 616, 51 C. C. A. 122, 65 L. R. A. 864 (C. C. A. 6). The construction thus giv-

en to such statutes by the state's highest judicial tribunal must be accepted. Price v. Illinois, 238 U. S. 446, 451, 35 Sup. Ct. 892, 59 L. Ed. 1400. There is a conflict in the evidence as to whether Hebe is as nutritious and as effective as a growth producer, and therefore as a health promoter and maintainer, as the legally recognized condensed milk. So long as that question is debatable, the Legislature is entitled to its own judgment, and that judgment may not be superseded by the views of the court. Price v. Illinois, 238 U. S. at page 452, 35 Sup. Ct. 892, 59 L. Ed. 1400; Rast v. Dan Deman & Lewis, 240 U. S. 342, 357, 36 Sup. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; Atlantic Coast Line v. Georgia, 234 U. S. 280, 288, 34 Sup. Ct. 829, 58 L. Ed. 1312; Staas v. State, 23 Ohio Cir. Dec. 159, affirmed without report 81 Ohio St. 497, 91 N. E. 1139; Klopfer v. Board of Health, 9 Ohio N. P. (N. S.) 33. With the wisdom of the exercise of that judgment the court has no concern; and, unless it clearly appears that the enactments have no substantial relation to a proper purpose, it cannot be said that the limit of legislative power has been transcended. Purity Extract Co. v. Lynch, 226 U. S. 192, 201, 202, 33 Sup. Ct. 44, 57 L. Ed. 184. Nor is it material that Hebe was not known when the Ohio statutes under consideration were enacted, and that the Legislature may have unwittingly prohibited the sale of an article of which it had no knowledge. Reiter v. State, 109 Md. at p. 240, 71 Atl. 975.

As to the practice of deception on consumers in the sale of the plaintiffs' product, there is substantial and uncontradicted evidence that it is represented to be and is sold as "Hebe milk" and as condensed milk. The monetary value of the cocoanut oil substituted for the butter fat removed from the milk by skimming is much less than that of such fat; the cost of the oil prior to the commencement of the present European War being about 13 cents and at the time of the hearing about 19 cents per pound. The difference between the price at which condensed milk and Hebe, respectively, may be manufactured and sold, is such that the temptation to impose upon the public has been too great to be resisted. It seems that when the form of label was under consideration by Calvert's predecessor in office, and when the Attorney General's opinion was rendered, there were but three wholesalers in the state that were distributing the plaintiffs' product. One of them in filling a contract of some magnitude with the United States Military Department twice supplied Hebe to fill an order for evaporated milk. The substitution was not detected until after the second delivery of goods was made. They were then returned to the seller.

It is in evidence that the plaintiffs have instructed their representatives to sell their product for what it really is; but, the purpose of the statute being to protect the people from deception by selling them one thing when they desire another, it is not important whether the plaintiffs intend or do not intend to deceive. They are the producers of an article which, it sufficiently appears, is freely sold by some retail dealers, at least, as a brand of condensed milk, of which there are several on the market, and is susceptible of being thus sold and used, and has

in good faith been bought by ordinary purchasers as such. The label, it is true, states that Hebe is a compound and names the elements of which it is composed; but it also informs the public that it may be used "for coffee and cereals, for baking and cooking." It may be applied to and is designed for the same uses as condensed milk. Its appearance is that of condensed milk, and, if there be a difference in the taste of the two, it is not such as the layman would be likely to detect. Blame cannot therefore be rightfully imputed to the unwary consumer who does not closely scrutinize the label upon the package in which Hebe is contained, and who concludes that that article, applied, as it. may be, to the same purposes as condensed milk, is and must be condensed milk itself, although parading under a fanciful name, and especially when it is sold to him by the retailer in response to an inquiry for such milk. Whether Hebe is as wholesome and nutritious as condensed milk is unimportant, so long as it is used as an instrument of fraud. Powell v. Pennsylvania, 127 U. S. 678, 8 Sup. Ct. 992, 1257, 32 L. Ed. 253. Producers of an article of food which may be and is used to deceive the public are not favored in courts of equity.

[8] The lawmakers have asserted, and the state Supreme Court has broadly declared, the constitutional right to enact the statutes here under consideration pertaining to food, drugs, and dairy products. State. v. Hutchinson; State v. Capital City Dairy Co., affirmed in Capital City Dairy Co. v. State, 183 U. S. 238, 22 Sup. Ct. 120, 46 L. Ed. 171. The sections which specifically deal with condensed and skimmed milk were not involved, it is true, in the cases just cited; but the regulatory rules which pervade those sections are so similar in character to those which govern the manufacture and sale of butter and oleomargarine and other foods and drugs as to bring such sections well within the provisions of the Ohio Constitution and render the last cited decisions applicable. They are furthermore regulatory and not prohibitive. State v. Capital City Dairy Co., 62 Ohio St. at pages 363, 364, 365, 57 N. E. 62, 57 L. R. A. 181; State v. Rippeth, 71 Ohio St. 85, 87, 72 N. E. 298; Capital City Dairy Co. v. Ohio, 183 U. S., at page 246, 22 Sup. Ct. 120, 46 L. Ed. 171; Butler v. Chambers, 36 Minn. 69, 30 N. W. 308, 1 Am. St. Rep. 638, and extended note. They forbid the practicing of fraud upon the general public. They seek to suppress false pretenses, to promote fair dealing and the public health in the sale of an article of food. They do not prohibit the manufacture and sale of all condensed milk, but guarantee to consumers a pure dairy product and prevent the sale of an adulterated or deceptive article. The Constitution of the United States does not secure to any one the privilege of manufacturing and selling an article offered in such manner as to induce purchasers to believe they are buying something which is in fact different from that which is offered for sale. That the state may rightfully enact a law such as that now under consideration, and that such law does not contravene any provision of the federal Constitution, appears from many well-considered cases. In Price v. Illinois, 238 U. S. at page 451, 35 Sup. Ct. at p. 894, 59 L. Ed. 1400,.

in which a statute prohibiting the use of boric acid in food preservatives was upheld, it was said that:

"The state has undoubted power to protect the health of its people and to impose restrictions having reasonable relation to that end. The nature and extent of restrictions of this character are matters for the legislative judgment in defining the policy of the state and the safeguards required. In the avowed exercise of this power, the Legislature of Illinois has enacted a prohibition—as the statute is construed—against the sale of food preservatives containing boric acid, and, unless this prohibition is palpably unreasonable and arbitrary, we are not at liberty to say that it passes beyond the limits of the state's protective authority."

In Dent v. West Virginia, 129 U. S. 114, 122, 9 Sup. Ct. 231, 32 L. Ed. 623, it was announced that the power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure or tend to secure them against the consequences of ignorance and incapacity, as well as deception and fraud. Mr. Justice Harlan, in Plumley v. Massachusetts, 155 U. S. 461, 472, 15 Sup. Ct. 154, 158 (39 L. Ed. 223) after citing the Dent Case to the above point, added:

"If there be any subject over which it would seem the states ought to have plenary control, and the power to legislate in respect to which, it ought not to be supposed, was intended to be surrendered to the general government, it is the protection of the people against fraud and deception in the sale of food products. Such legislation may, indeed, indirectly or incidentally, affect trade in such products transported from one state to another state. But that circumstance does not show that [the] laws of the character alluded to are inconsistent with the power of Congress to regulate commerce among the states."

[9] There are many other cases to the point that the legislation of a state, such as is here under consideration, not directed against commerce or any of its regulations, but relating to the rights, duties, and liabilities of citizens, and only indirectly and remotely affecting the operations of commerce, is valid and of obligatory force upon citizens within its territorial jurisdiction, whether engaged in commerce, foreign or interstate, or in any other pursuit, among which are Sherlock v. Alling, 93 U. S. 99, 103, 23 L. Ed. 819; Rahrer's Case, 140 U. S. 546, 11 Sup. Ct. 865, 35 L. Ed. 572; Standard Stock Food Co. v. Wright, 225 U. S. 540, 547, 32 Sup. Ct. 784, 56 L. Ed. 1197; and Minnesota Rate Cases, 230 U. S. 352, 408, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18.

Reliance is placed by the plaintiffs on McDermott v. Wisconsin, 228 U. S. 115, 33 Sup. Ct. 431, 57 L. Ed. 754, 47 L. R. A. (N. S.) 984, Ann. Cas. 1915A, 39, in which it was held that the word "package," or its equivalent expression, as used by Congress in sections 7 and 8 of the Pure Food and Drugs Act (June 30, 1906, c. 3915, 34 Stat. 768 [Comp. St. 1916, §§ 8723, 8724]), in defining what shall constitute "adulteration" and what shall constitute "misbranding" within the meaning of that act, refers to the immediate container of the article which is intended for consumption, and that, when an article in inter-

state commerce is by the terms of that act properly labeled, a state cannot require such label, when properly affixed, to be removed and other labels authorized by its own statute to be affixed to the package containing the article, so long as it remains unsold by the importer, whether it be in the original case or not. It is claimed that the teachings of that case are that the protection accorded to articles of interstate commerce by the federal Constitution extends to the sale in Ohio by wholesale and retail dealers in plaintiffs' goods in the original packages, i. e., the labeled tin containers, notwithstanding the Ohio statute under consideration. The Wisconsin act was in direct conflict with the federal act, which covers the field, as regards the labeling of articles of food which are transported in interstate commerce, and leaves nothing on which a state law touching labels can operate. The object of the federal act is to prevent the misuse of the facilities of interstate commerce in conveying to and placing before the consumer misbranded and adulterated articles of medicine or food; and, in order that its protection may be afforded to those who are intended to receive its benefits, the brands or labels, the regulation of which is within the power of Congress, it was properly held, must be upon the package intended to reach the purchaser.

But it was also expressly stated that it by no means follows that the state is not permitted to make regulations with a view to the protection of its people against fraud or imposition by impure food or drugs. The plaintiffs' contention must fail, for the reason that, where the mode of putting up and labeling a package is adapted to meet the requirements of local trade or intrastate commerce and its sale is conducive to the deception of the consumer, the dealer will not be protected on the ground that he is selling an original package. The police power of a state extends to all regulations of its internal commerce designed to prevent imposition and fraud, as well as to those designed to promote public health, public morals, or public safety although the regulations prescribed may incidentally affect interstate commerce, provided Congress has not acted in the particular matter. Congress has not declared that an article of food whose transportation in interstate commerce is permissible under the terms and provisions of the Pure Food and Drugs Act may be sold in a state to which it has been shipped, if such article is susceptible of use and is used as a means of deceiving consumers. The self-protecting power of the state may be rightfully exerted against its introduction, and such exercise of power cannot be considered a regulation of commerce prohibited by the Constitution. Savage v. Jones, 225 U. S. 501, 32 Sup. Ct. 715, 56 L. Ed. 1182; Sligh v. Kirkwood, 237 U. S. 52, 35 Sup. Ct. 501, 59 L. Ed. 835; Mutual Film Co. v. Industrial Commission of Ohio (D. C.) 215 Fed. 138; Hall v. Geiger-Jones Co., 242 U. S. 539, 37 Sup. Ct. 217, 61 L. Ed. 480; Ann. Cas. 1917C, 643; Arbuckle v. Blackburn.

[10] Nor does the Ohio statute contravene the Fourteenth Amendment to the federal Constitution. It has drawn a distinction, as it may do (Rast v. Van Deman & Lewis, 240 U. S. 342, 357, 36 Sup. Ct. 370,

60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455), between condensed milk made in accordance with its terms and that which is otherwise produced, and between the manufacturers and sellers of such respective kinds of milk. The statute, like that under consideration in Powell v. Pennsylvania, 127 U. S. 678, 687, 8 Sup. Ct. 992, 1257, 32 L. Ed. 253, places under the same restrictions, and subjects to like penalties and burdens, all who manufacture or sell, or offer for sale, or keep in possession to sell, the articles embraced by its prohibitions—thus recognizing and preserving the principle of equality among those engaged in the same business. We cannot say that the Ohio statute is unreasonable and arbitrary and deprives the plaintiffs of property without due process of law. Price v. Illinois; St. John v. New York, 201 U. S. 633, 26 Sup. Ct. 554, 50 L. Ed. 896, 5 Ann. Cas. 909.

Whether either standard or skimmed milk may be used as a constituent element of a compound or mixed food, and whether Hebe is nothing more than adulterated condensed milk with a minor ingredient added, and other questions discussed by counsel, need not be decided, although they have received the thoughtful consideration of the court.

A decree may be entered dismissing the bill.

WARRINGTON, Circuit Judge, and HOLLISTER, District Judge, concur in the foregoing opinion.