THOMAS VS. CITY OF HOT SPRINGS.

1. MUNICIPAL CORPORATIONS: *Power to punish drumming.*

A corporation may make it a penal offense for any person to drum customers to gaming houses and strumpet houses, and such other immoral and pernicious occupations, as it has power under its charter to suppress. But it has no power to make it a crime to solicit custom for hotels, competent practitioners of medicine, or other ordinary lawful and useful occupations.

APPEAL from *Garland* Circuit Court.

Hon. J. M. SMITH, Circuit Judge.

*Benjamin,* for appellant.

*Henderson, Attorney General, contra.*

ENGLISH, C. J. On the twenty-third of May, 1879, Harry Thomas was arrested under a warrant issued by the police judge of the city of Hot Springs, on a charge of having committed the offense of drumming John West to Dr. C. J. Weatherby, etc.

The defendant was tried before the police judge, convicted, and appealed to the circuit court of Garland county, where the case was submitted to the court, by consent of parties, on the plea of not guilty. The court found defendant guilty upon the evidence, and fined him $10. He moved for a new trial, which the court refused, and he took a bill of exceptions, and appealed to this court.

On the trial, the following ordinance was read in evidence:

" ORDINANCE ON DRUMMING.

"CITY OF HOT SPRINGS, May 5, 1879.

" *Be it ordained by the Mayor and Board of Aldermen of the City of Hot Springs, that:*

" WHEREAS, The laws of the state for the incorporation,

organization and government of municipal corporations, approved March 9, 1875, give power to the city council to license, regulate and suppress ordinaries, corn doctors, private and venereal hospitals, and to make and publish by-laws and ordinances which to them shall seem necessary to secure such corporations and their inhabitants against thieves and other persons violating the public peace, and to promote the prosperity, and improve the morals, order, comfort and convenience of such corporations and their inhabitants, against thieves and other persons violating the public peace, and to promote the prosperity, and improve the morals, order, comfort and convenience of such corporations and their inhabitants; and,

"WHEREAS, It is well known that persons who run, drum and solicit patronage for physicians and quacks, boarding-houses, bath-houses and gambling dens, cause great inconvenience to this resort, provoke disorder, and greatly injure the morals, comfort and business thereof;

"Sec. 1. Therefore, be it ordained by the mayor and board of aldermen of the city of Hot Springs, that any person who shall be found drumming, running, or soliciting strangers or visitors to this place for any hotel, boarding-house, bath-bouse, physician, or pretended physician, quack, or vendor of nostrums—and any person who shall employ another for any such purpose, or shall in any way encourage or countenance such drumming, running or soliciting for any hotel or boarding-house he or she may control, or for any business, profession or vocation he or she may be engaged in, or for any purpose whatever in the limits of this city, shall be deemed guilty of a misdemeanor, and on conviction shall be fined in any sum not less than ten dollars nor more than twenty-five dollars.

"Sec. 2. If any physician, or pretended physician, quack or vendor of nostrums, hotel or boarding-house keeper, or any other person, shall receive patients, boarders or customers at the hands, and upon the recommendation or reference of such persons as are recognized as drummers, he or she shall be deemed guilty of a violation of section one of this ordinance, and punished as therein provided.

"Sec. 3. Any person engaged in drumming, running, or soliciting strangers or visitors for any hotel, boarding-house, bath-house, physician or pretended physician of this city, by going back and forth from this city on the railroad train, shall be deemed guilty of a violation of section one, of this ordinance, and upon conviction shall be punished as herein provided.

"Sec. 4. Every person engaged in drumming, running, or soliciting strangers or visitors, for any hotel, boarding-house, bath-house, physician or pretended physician, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than ten dollars; and every day such person continues so engaged drumming, running or soliciting, he shall be deemed guilty of a violation of this section, and for each repetition of the offense made punishable under this section, he shall be fined double the sum of the fine imposed at the former trial, until the same amounts to fifty dollars.

"Sec. 5. Any person furnishing information leading to arrest and conviction of any person for a violation of this ordinance, and any police officer arresting such person at his own instance, shall receive one-half of the fine that may be collected out of the defendant upon conviction for violation of this ordinance."

Section 6 repeals conflicting ordinances, etc., and puts this ordinance in force from its passage.

The parties consented to try the case on an agreed statement of facts, as follows:

"That on the twenty-second day of May, 1879, in the city of Hot Springs, etc., defendant, Harry Thomas, by words of request and persuasion, solicited or drummed John West, a visitor to said city, etc., to employ Dr. C. J. Weatherby, a graduate of medicine and practicing physician in said city, etc.; and by such request and persuasion induced him to employ said Weatherby as his physician, and that defendant received therefor pay from said Weatherby; that he was then, and had been for some time, engaged in so soliciting for a firm of physicians, and that for procuring patients he is paid at the rate of five dollars per patient, and was so paid by said Weatherby, and that he has not and does not drum or solicit for any physician or physicians save such as are graduates, and skillful in their profession."

The above being all the evidence, appellant moved the court to declare, as a proposition of law applicable in this case:

"That the solicitation of business and patronage is matter of common right, and that no municipal corporation can prohibit the same; and that the ordinance introduced in evidence in this case, and upon which this case is based, is unreasonable and void."

But the court refused so to declare the law, and found appellant guilty, etc.

The twelfth section of the act of March 9, 1875, for the organization and government of municipal corporations (*Acts of 1875, p. 8*), empowers such corporations to license, regulate, tax or suppress a large number of occupations, exhibitions, amusements, etc., which are named, but drumming is not among them.   Nor is there any pro-

vision òf this act, or any other act, which authorizes such corporations to license or prohibit drumming.

A drummer is one who solicits custom.— *Webster*.

Drummers are, and have been for ages, a large and active class of commercial and business agents. They, it must be presumed, were as familiar to the law-makers as brokers, hawkers, peddlers, pawn-brokers, and others mentioned in the above act; and yet they are not named, nor has our legislature, by any act, thought proper—if it might do so in the exercise of the police power—to require drummers to obtain license from any source, or undertaken to make it a criminal offense to drum for any lawful business.

It was conceded by the Attorney General, who argued this case for appellee, that drummers are not embraced in the twelfth section of the act, but he submitted that appellee had power, under the latter part of the twenty-second section of the act known as the general welfare clause, to make it a criminal offense for any person to drum for lawful occupations.

In *Tuck v. Town of Waldron, 31 Ark., 462*, the corporation attempted, under an ordinance passed by its council, to punish Tuck criminally for selling a half-gallon of whisky without obtaining license.

By the twelfth and seventeenth sections of the above act, municipal corporations are expressly empowered to license, regulate, tax or suppress tippling-houses and dram-shops, and also to regulate and prohibit ale and porter shops and houses, and public places of habitual resort for tippling and intemperance, etc.; but they are not expressly empowered to require persons selling ardent spirits, as Tuck did, to obtain license, and it was claimed that the corporation ot Waldron had power, under the

Thomas vs. City of Hot Springs.

general welfare clause, to require persons selling in any quantities to procure license. This court said:

" The rule seems to be, as stated by Judge Dillon, that when there are both special and general provisions, the power to pass by-laws under the special express grant can only be exercised in the cases, and to the extent as respects those matters allowed by the charter or incorporating act ; and the power to pass by-laws under the general clause does not enlarge or annul the power conferred . by the special provisions in relation to their various subject matters, but gives authority to pass by-laws, reasonable in their character, upon all other matters within the scope of their municipal authority, and not repugnant to the constitution and general laws of the state."

Under this rule, it was decided that the council at Waldron had no power to pass the ordinance under which Tuck was convicted.

So in *Martin, ex parte, 27 Ark., 467*, Martin was fined for violating an ordinance of the city of Little Rock, regulating sales by auctioneers. The ordinance was passed when the city derived its powers from the general act of incorporation of April 9, 1869, in which authority was not expressly given to tax and regulate auctioneers. Auctioneers were only mentioned in the act in connection with selling horses or other domestic animals on the streets. Martin was an auctioneer of merchandize in a house, and it was held that the ordinance under which he was convicted was void, for want of power in the corporation to pass it.

No doubt a corporation may make it a penal offense for any person to drum customers to gaming-houses, gambling-tables, banks, etc., strumpet-houses, and other occupations which are immoral and pernicious in their character and

tendencies, such as it has power under its charter to suppress.

But the keeping of hotels, boarding-houses, bath-houses, and the practice of medicine, by competent persons, are ordinary, lawful and useful occupations, and to make it a crime to solicit custom for them, is an unwarranted interference with constitutional rights and privileges of citizens under our form of government.

In this case appellant was charged and convicted for soliciting a patient to a physician, who was a graduate of medicine, and skilled, it is admitted, in his profession. It may be in bad taste, and a violation of the ethics of his profession, for a physician to employ a drummer to procure patients for him, but appellee had no legal power to make such drumming a crime, and punish it as such.

The judgment must be reversed, and the cause remanded with instructions to the court below to discharge appellant from further prosecution upon the charge made against him.