[Argued October 10, 1892; decided October 17, 1892.]

## EX PARTE AH HOY.

[*Ah Hoy* v. *Spencer*, 31 Pac. Rep. 220.]

1. STATUTORY CONSTRUCTION—SPECIAL AND GENERAL ACTS—LEGISLATIVE INTENT.— It is a general rule of statutory construction that where in a statute there is a particular enactment, and also a general one which in its most comprehensive sense will include what is embraced in the former, the particular enactment will prevail over the general provision, so far as they are incompatible; but, like all rules for the interpretation of statutes, it is only an aid in discovering the legislative intent, and must not be permitted to limit or extend the operation of that intent.

2. IDEM—REPUGNANCY.— The rule that general legislation on a particular subject must give way to special legislation on the same subject, does not apply except in those cases where there is a repugnancy or incompatibility between the general and special provisions.

3. CITY ORDINANCES—SUPPRESSION OF GAMING.— Where a city charter gives the council power "to prevent and suppress gaming and gambling-houses or places where any game in which chance predominates is played for anything of value, *and* to punish any person who engages in such game, or keeps or frequents such a house," the council is not limited to punishing the persons named in the last part of the section, but may, under the general power "to prevent and suppress," punish any one who merely goes into a gambling-room.

Multnomah County : E. D. SHATTUCK, Judge.

Plaintiff appeals. Affirmed.

*Alfred F. Sears*, and *Henry E. McGinn* (*Chas. A. Petrain*, and *N. D. Simon*, on the brief), for Petitioner.

.   *Wm. T. Muir*, city attorney, for Respondent.

BEAN, J.—This is an application for a writ of *habeas corpus* to discharge the petitioner from the custody of the chief of police of the city of Portland, upon the ground that he is deprived of his liberty without due process of law ; and the case comes here on appeal from a judgment of the circuit court denying the application and remanding the petitioner. From the petition and return to the writ it appears that the common council of the city of Portland, with the approval of the mayor, on September 19, 1885, passed ordinance numbered 4678, entitled "An

ordinance to prevent and suppress gaming and gambling-houses and all public places where any game in which chance predominates is played for anything of value, and to punish any person who engages in any such game, or keeps or frequents any such house or place." Section 3 of this ordinance reads as follows : "No person or persons shall, within the corporate limits of the city of Portland, frequent or go into or visit any gaming or gambling-house or place mentioned in section 1 of this ordinance." The petitioner was arrested in August, 1892, and is now deprived of his liberty by virtue of a warrant of arrest, regularly issued out of the police court of the city of Portland, based upon a complaint charging that on the twenty-third day of August, 1892, within the corporate limits of the city, he "did wilfully and unlawfully go into and visit a certain gaming and gambling-house, to wit, the house known as No. 246 Alder street." In support of this application, his counsel insist that the ordinance under which the warrant for his arrest was issued is void in so far as it undertakes to make it an offense to go into or visit a gaming or gambling-house — *first*, because of want of power in the city to enact it, and, *second*, because it is unjust and unreasonable.

By the charter of the city of Portland, in force at the time of the passage of the ordinance under which petitioner was arrested, and at the time of his arrest, it is provided that "the council has power and authority," within the city, "to prevent and suppress gaming and gambling houses or places where any game in which chance predominates is played for anything of value ; and to punish any person who engages in such game or keeps or frequents such a house": Laws, 1885, 410; Laws, 1891, 804. The contention of counsel for petitioner is that under the provision of the charter the city may "prevent and suppress" gaming and gambling-houses in any manner which can reasonably be held effective, except that when it attempts to "prevent and suppress" by means of punishment, such punishment must be re-

stricted to the classes specially enumerated in the charter, to wit, "those who engage in such game, or keep or frequent such house"; and in support of this contention they invoke the well-settled rule of construction, that where there is in the same statute a particular enactment, and also a general one which in its most comprehensive sense would include what is embraced in the former, the particular enactment will prevail over the general provision so far as the two are incompatible or in conflict: Sutherland Stat. Constr. § 159; End. Interp. Stat. §§ 288, 560. This rule is well settled and generally recognized by the courts, and is nothing more than another form of giving expression to the principle that general legislation on a particular subject must give way to special legislation on the same subject: *State* v. *Clark*, 25 N. J. Law, 54; *State* v. *Mayor*, 33 N. J. Law, 57; *State* v. *Geotze*; 22 Wis. 365; *State* v. *De Bar*, 58 Mo. 395. It is only a rule of construction by which courts are to ascertain the intention of the legislature, and does not apply except in those cases where there is some repugnancy or incompatibility between the general and special provisions: *Foster* v. *Blount*, 18 Ala. 687; *State* v. *Holman*, 3 McCord, *306; *Woodworth* v. *State*, 26 Ohio St. 196; and as was said by Depue, J., "is subordinate to the cardinal principle for the construction of statutes, that they are to be so construed that if possible full effect shall be given to all parts of the statute. This latter rule must be applied to ascertain wherein language which is specific, necessarily comes in contact with other language which is general. The effort must in the first instance be to harmonize all the provisions of the statute by construing all parts together, and it is only when on such construction the repugnancy of specific provisions to the general language is plainly manifested, that the intent of the legislature, as declared in the general enacting parts of the statute, is superseded" : *State R. R. Co.* v. *Com. of R. R. Taxation*, 37 N. J. L. 233. The intention of the legislature, as expressed in the language used, must govern in the con-

struction of all statutes; and it is the duty of the court to construe legislative enactments according to the natural and most obvious import of the language, and without resorting to refined distinctions or forced constructions, for the purpose of either limiting or extending their operations; and all rules for the interpretation of statutes only serve to assist in ascertaining the legislative intention: Suth. Stat. Constr. § 234.

Looking now at the provisions of the charter of the city of Portland under consideration, the manifest intention of the legislature was to confer upon the city full power and authority "to prevent and suppress gaming and gambling-houses," and there is no incompatibility or conflict between the general provisions of the charter and the latter part of the section authorizing the punishment of certain designated classes. The punishment of these classes is only one means of accomplishing the purposes intended by the general provisions, and there is nothing in the language of the section to indicate that the legislature intended to limit or restrict the city to this means alone. Both the general and special provisions may be operative and not in any conflict with each other. Under the power to "prevent and suppress," the city could, for example, punish persons who knowingly rented or let a building for gambling purposes: *Childress* v. *Mayor*, 35 Tenn. 347; or who solicited persons to play at a game of chance: *Thomas* v. *Hot Springs*, 34 Ark. 553 (36 Am. Rep 24); or who visits or is found in a gambling-house: *State* v. *Botkin*, 71 Iowa, 87 (60 Am. Rep. 780; 32 N. W. Rep. 135). None of these matters are included in the clause of the section, nor does the exercise of the power to prevent and suppress gaming and gambling-houses in the manner thus suggested in any way conflict with the special provisions of the charter. The latter clause of the section is separated from the general grant of power by the word "and," and does not in terms, or by necessary implication, purport to enumerate the only cases in which punishment may be used as a means of

preventing and suppressing gaming and gambling-houses, but on the contrary would seem to have been intended as a separate grant of power. Both clauses have their effect and can be so construed as to harmonize with each other; and without assuming authority to nullify or disregard express or statutory law, we cannot declare the municipal regulation making it an offense to go into or visit a gaming or gambling-house void and of no effect.

The latter part of the section of the charter under consideration was added by the legislature of 1885 apparently out of abundance of caution to avoid the effect of the decision of the federal court in the case of Lee Tong, 18 Fed. Rep. 253, decided in 1883, in which it was held by Judge DEADY that the provision in the charter, as it then stood, "to suppress gaming and gambling-houses," did not authorize the city to provide by ordinance for the punishment of persons engaged in a gambling game. It was not intented to limit or restrict the powers conferred by the general language, but rather to remove any question as to the right of the city to punish persons who might engage in a gambling game or keep or frequent a gambling-house. Whether under the general power "to prevent and suppress gaming and gambling-houses" the city could punish any of the designated classes, is unnecessary for us to consider. In Iowa, where the rule as announced in the case of Lee Tong prevails, it was held in *State* v. *Botkin, supra*, that under a power to "repress and restrain disorderly houses," the city was authorized to prohibit persons from entering such houses or being found therein, the court saying that "no more efficient manner of exercising this power can be devised than to prohibit persons to enter such houses or be found therein." And so in this case; it seems to us no more efficient way can be devised for preventing or suppressing gaming or gambling-houses than to prohibit persons from going into or visiting them. We are, therefore, of the opinion that the city had power and authority to enact the pro-

visions of the ordinance under which petitioner was arrested.

We cannot agree with counsel that the provisions of the ordinance under consideration are unreasonable and unjust, because by its terms it applies to persons going into or visiting gaming or gambling houses for lawful as well as unlawful purposes.

According to well-settled and familiar rules for the construction of statutes, the subject matter, effect and consequences, the object, reason, and spirit of a statute, as well as its words, must be considered in interpreting and construing it. Under these rules a statute intending to prohibit a public offense will never be applied to an innocent or lawful act. "Hence," says BECK, J., in *State* **v.** *Botkin, supra,* "if an act is done which is prohibited by the words of the statute, it may be shown to be lawfully or innocently done. The illustrations and application of these rules given by Blackstone are most apt, and are familiar to the profession   See introduction to commentaries, ¿ 2, pp. 59, 62. We need not consume time to repeat them. In support of these views, see Bl. Comm. 59, 62, 87, *et seq.*, and Potter's Dwar. St. 208, *et seq.*"

The judgment of the court is therefore affirmed.

[Argued Oct. 13, 1892; decided Oct. 25, 1892; rehearing denied Dec. 12, 1892.]