## FULLER BRUSH CO. v. TOWN OF GREEN RIVER.

### No. 2167.

District Court, D. Wyoming.

July 15, 1932.

Ray E. Lee and Sam M. Lee, both of Cheyenne, Wyo., for plaintiff.

T. S. Taliaferro, Jr., of Rock Springs, Wyo., for defendant.

KENNEDY, District Judge.

This is a suit in which the plaintiff seeks to have declared invalid and unconstitutional a municipal ordinance of the defendant and to restrain the enforcement of said ordinance against plaintiff.

The suit as originally filed challenged the constitutionality of an ordinance adopted by the defendant municipality, but in its answer the defendant set up that said ordinance had been revoked and another passed, the terms of which were therein set forth. The plaintiff thereupon, by permission of the court, filed a reply which in substance challenged the new ordinance as being like its predecessor in violation of the constitutional rights of the plaintiff and seeking to have its enforcement restrained. The case then went to final hearing upon the issues thus joined. It has been submitted upon an agreed statement of facts, which in substance are as follows: That the suit is one properly invoking the jurisdiction of the court; that the plaintiff is engaged in the sale and distribution of merchandise to the public over the United States, having a principal place of business at Hartford, Conn.; that in carrying on its business the plaintiff has representatives, solicitors, and agents in the various states to take orders for such merchandise which are forwarded to the home office or to distributing stations outside the state of Wyoming to be accepted and filled, and, when so accepted, the merchandise is shipped in interstate commerce to the person ordering the same; that the agents, solicitors, and representatives of the plaintiff, against the wishes of the occupants of some of the dwellings, go uninvited and upon private premises, the same being homes and residences of people living in the town of Green River where such agents solicit orders from the occupants of said private residences for the sale of the merchandise of the plaintiff; the same being contrary to the express provisions of the ordinance here challenged.

The ordinance in question, so far as it is material here, reads as follows:

"Section 1. The practice of going in and upon private residences in the Town of Green River, Wyoming, by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods, wares and merchandise, and/or for the purpose of disposing of and/or peddling or hawking the same, is hereby declared to be a nuisance, and punishable as such nuisance as a misdemeanor.

"Section 2. The Town Marshall and Police Force of the Town of Green River are hereby required and directed to suppress the same, and to abate any such nuisance as is described in the first section of this ordinance.

"Section 3. Any person convicted of perpetrating a nuisance, as described and prohibited in the first section of this ordinance, upon conviction thereof shall be fined in a sum not less than Twenty-five (25.00) Dollars or more than One Hundred Dollars ($100.00), together with costs of proceedings, which said fine may be satisfied, if not

paid in cash, by execution against the person of anyone convicted of committing the misdemeanor herein prohibited."

It is further stipulated that the pertinent laws covering grants and powers delegated by the Legislature of the state of Wyoming to municipalities such as the defendant are found in the following provisions of the Wyoming Revised Statutes, 1931:

Sec. 22-1427, subd. 29. "To make and establish such by-laws, ordinances, rules and regulations, not repugnant to the laws of the state, as may be necessary to carry into effect the provisions of this article, and to repeal, alter and amend the same as they shall seem to require; and to enforce all such by-laws, ordinances, rules and regulations, by inflicting penalties for the violation thereof, not exceeding one hundred dollars for any one offense, recoverable with costs, together with judgment of imprisonment, until the amount of said judgment and costs shall be paid."

Section 22-1427, subd. 6. "To declare what shall constitute a nuisance, and to prevent, abate and remove the same, and to take such measures for the preservation of the public health as they deem necessary, and to provide the town with water."

Section 32-712. "Nothing in §§ 32-700 to 32-711 shall be so construed as to prevent any city, town or village, incorporated under the laws of this state, or the proper corporate authority thereof, from passing or enforcing any ordinance, by-law, regulation or rule, regulating, restraining, or prohibiting nuisances of any kind or character, or from enforcing any ordinance, by-law, rule or regulation thereupon, already passed and in force."

It is further agreed that the merchandise which plaintiff sells, as aforesaid, consists of clothes, tooth, hair, manicure, massage, hat, furniture, cleaning, and other kinds of brushes; and also brooms, floor, wall, and furniture dusters, furniture polish, floor mops, window cleaners, and other household articles; that, when a representative of the plaintiff goes to a residence to solicit orders for merchandise, he approaches the same in a quiet and orderly manner, rings the doorbell or knocks on the door to attract the attention of the occupant of the house; that, when the occupant appears, the representative hands him a card stating substantially that he will call at some future time to redeem the card, and presents the person with a gift item, with the compliments of the plaintiff, and sometimes the representative makes an appointment to call at a definite time for an interview; when no one answers the knock or ring of the doorbell, the representative frequently leaves a card underneath the door or in some place where it will be readily seen, and subsequently the representative again calls at the house and presents the occupant with a gift item with the compliments of the plaintiff, explains the use of the article, and, with the permission of the occupant, exhibits and demonstrates by samples the products manufactured by plaintiff and endeavors to secure orders for delivery at a future date; when orders are given, they are entered upon an order sheet and a copy left with the customer, which orders are forwarded to the plaintiff at its home office or one of its branch offices for acceptance and filling; when orders are accepted, the merchandise is shipped by the plaintiff from outside the state of Wyoming to be delivered to the customer, and is, when received, delivered to such customer in a quiet and orderly manner by a representative of the plaintiff and the purchase price collected and remitted to the plaintiff. The defendant, by its answer, admits that it will arrest any person or persons who willfully and intentionally violate the provisions of the ordinance therein set forth.

Nothing appears in the agreed statement of facts as to the ground or reason for the passage of the ordinance in question, and it must therefore be considered upon the basis of whether or not upon its face it exceeds constitutional limitations.

The challenge to the validity of the ordinance is that it offends against the commerce, due process, and equal protection clauses of the Federal Constitution. Extended argument, orally and by brief, has been offered by counsel for the plaintiff along the line that the ordinance is in violation of the commerce clause, but, as it seems to me, such objection is not pertinent to the circumstances in this case, nor do the cases cited seem to support the theory of counsel along this line. It has been repeatedly held in connection with licensing or taxing laws or ordinances, as applied to nonresidents, that they violate the commerce clause in burdening interstate commerce; but neither of such elements appear in the ordinance here under consideration. Here the question appears to be one solely of whether the defendant has exceeded the authority purported to be vested in it by legislative enactment in invoking the police power by declaring certain transactions to be a nuisance.

A glance at the authorities seem to lead

to this conclusion. In Reinman v. Little Rock, 237 U. S. 171, at pages 176, 177, 35 S. Ct. 511, 513, 59 L. Ed. 900, the Supreme Court has expressed itself upon the subject in the following language:

"It must therefore be treated, for the purposes of our jurisdiction, as an act of legislation proceeding from the lawmaking power of the state; for a municipal ordinance passed under authority delegated by the legislature is a state law within the meaning of the Federal Constitution; and any enactment, from whatever source originating, to which a state gives the force of law, is a statute of the state within the meaning of Judicial Code, § 237 [28 USCA § 344], which confers jurisdiction upon this court. Atlantic Coast Line [R. Co.] v. Goldsboro, 232 U. S. 548, 555, 34 S. Ct. 364, 58 L. Ed. 721, 725, and cases cited.

"While such regulations are subject to judicial scrutiny upon fundamental grounds, yet a considerable latitude of discretion must be accorded to the lawmaking power; and so long as the regulation in question is not shown to be clearly unreasonable and arbitrary, and operates uniformly upon all persons similarly situated in the particular district, the district itself not appearing to have been arbitrarily selected, it cannot be judicially declared that there is a deprivation of property without due process of law, or a denial of the equal protection of the laws, within the meaning of the 14th Amendment. Slaughter-House Cases, 16 Wall. 36, 62, 21 L. Ed. 394, 404; Northwestern Fertilizing Co. v. Hyde Park, 97 U. S. 659, 667, 24 L. Ed. 1036, 1038; Barbier v. Connolly, 113 U. S. 27, 30, 5 S. Ct. 357, 28 L. Ed. 923, 924; Soon Hing v. Crowley, 113 U. S. 703, 708, 5 S. Ct. 730, 28 L. Ed. 1145, 1146; Lawton v. Steele, 152 U. S. 133, 136, 14 S. Ct. 499, 38 L. Ed. 385, 388; Gundling v. Chicago, 177 U. S. 183, 188, 20 S. Ct. 633, 44 L. Ed. 725, 728; Williams v. Arkansas, 217 U. S. 79, 87, 30 S. Ct. 493, 54 L. Ed. 673, 676, 18 Ann. Cas. 865; Cronin v. People, 82 N. Y. 318, 321, 37 Am. Rep. 564; In re Wilson, 32 Minn. 145, 148, 19 N. W. 723; City of St. Louis v. Russell, 116 Mo. 248, 253, 22 S. W. 470, 20 L. R. A. 721."

Again, in Standard Oil Co. v. City of Marysville, 279 U. S. 582, at page 584, 49 S. Ct. 430, 73 L. Ed. 856, Mr. Justice Stone, in speaking for the court, says: "We need not labor the point, long settled, that, where legislative action is within the scope of the police power, fairly debatable questions as to its reasonableness, wisdom, and propriety are not for the determination of courts, but for that of the legislative body on which rests the duty and responsibility of decision. Zahn v. Board of Public Works, 274 U. S. 325, 328, 47 S. Ct. 594, 71 L. Ed. 1074; Hadacheck v. Sebastian, 239 U. S. 394, 403-412, 413, 414, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927; Euclid v. Ambler Realty Co., 272 U. S. 365, 388, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; Jacobson v. Massachusetts, 197 U. S. 11, 30, 25 S. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765; Laurel Hill Cemetery v. San Francisco, 216 U. S. 358, 365, 30 S. Ct. 301, 54 L. Ed. 515; Cusack Co. v. City of Chicago, 242 U. S. 526, 530, 37 S. Ct. 190, 61 L. Ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594; Price v. Illinois, 238 U. S. 446, 451, 35 S. Ct. 892, 59 L. Ed. 1400."

As to the general scope of the police power and the legislative duty in relation thereto, the doctrine is lucidly set forth in the case of Lawton v. Steele, 152 U. S. 133, at page 136, 14 S. Ct. 499, 500, 38 L. Ed. 385, in the following language: "The extent and limits of what is known as the 'police power' have been a fruitful subject of discussion in the appellate courts of nearly every state in the Union. It is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance. Under this power it has been held that the state may order the destruction of a house falling to decay, or otherwise endangering the lives of passers-by; the demolition of such as are in the path of a conflagration; the slaughter of diseased cattle; the destruction of decayed or unwholesome food; the prohibition of wooden buildings in cities; the regulation of railways and other means of public conveyance, and of interments in burial grounds; the restriction of objectionable trades to certain localities; the compulsory vaccination of children; the confinement of the insane or those afflicted with contagious diseases; the restraint of vagrants, beggars, and habitual drunkards; the suppression of obscene publications and houses of ill fame; and the prohibition of gambling houses and places where intoxicating liquors are sold. Beyond this, however, the state may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests. Barbier v. Connolly, 113 U.

S. 27, 5 S. Ct. 357 [28 L. Ed. 923]; Kidd v. Pearson, 128 U. S. 1, 9 S. Ct. 6 [32 L. Ed. 346]. To justify the state in thus interposing its authority in behalf of the public, it must appear—First, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon ,lawful occupations; in other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts."

As to the limitations upon the police power in the light of the Fourteenth Amendment, Mr. Justice McReynolds in Meyer v. State of Nebraska, 262 U. S. 390, at page 399, 43 S. Ct. 625, 626, 67 L. Ed. 1042, 29 A. L. R. 1446, uses the following language:

"The problem for our determination is whether the statute as construed and applied unreasonably infringes the liberty guaranteed to the plaintiff in error by the Fourteenth Amendment: 'No State * * * shall deprive any person of life, liberty or property without due process of law.'

"While this court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been, definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men."

In Liggett Co. v. Baldridge, 278 U. S. 105, at pages 111 and 112, 49 S. Ct. 57, 58, 73 L. Ed. 204, the decision of the court is expressed by Mr. Justice Sutherland in the following language:

"That appellant's business is a property right (Duplex [Printing Press] Co. v. Deering, 254 U. S. 443, 465, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196; Truax v. Corrigan, 257 U. S. 312, 327, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375), and as such entitled to protection against state legislation in con-

travention of the federal Constitution, is, of course, clear. That a corporation is a 'person' within the meaning of the due process and equal protection clauses of the Fourteenth Amendment, and that a foreign corporation permitted to do business in a state may not be subjected to state statutes in conflict with the federal Constitution, is equally well settled. Kentucky Co. v. Paramount [Auto] Exch., 262 U. S. 544–550, 43 S. Ct. 636, 67 L. Ed. 1112; Power Mfg. Co. v. Saunders, 274 U. S. 490, 493, 496, 497, 47 S. Ct. 678, 71 L. Ed. 1165; Frost Trucking Co. v. R. R. Commission, 271 U. S. 583, 594 et seq., 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457. And, unless justified as a valid exercise of the police power, the act assailed must be declared unconstitutional because the enforcement thereof will deprive appellant of its property without due process of law.

"The act is sought to be sustained specifically upon the ground that it is reasonably calculated to promote the public health; and the determination we are called upon to make is whether the act has a real and substantial relation to that end or is a clear and arbitrary invasion of appellant's property rights guaranteed by the Constitution. See Adair v. United States, 208 U. S. 161, 173, 174, 28 S. Ct. 277, 52 L. Ed. 436, 13 Ann. Cas. 764; Mugler v. Kansas, 123 U. S. 623, 661, 8 S. Ct. 273, 31 L. Ed. 205. The police power may be exerted in the form of state legislation where otherwise the effect may be to invade rights guaranteed by the Fourteenth Amendment only when such legislation bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare."

The foregoing cases are not analogous in point of facts to the case under consideration, and in truth counsel have been unable to submit any cases which bear a near resemblance to the case at bar. The ordinance must therefore be largely analyzed and considered in the light of general principles which have been laid down in the texts and judicial decisions.

The gist of the controversy here appears to me to be that the ordinance declares certain defined things to be a nuisance, involving the legal point as to whether this is a valid exercise of the police power. It must be admitted that the things in the ordinance declared to be a nuisance have not been so regarded in the ordinary experience of the human race. May we inquire, what is a nuisance? In Kilts v. Board of Supervisors, 162 Mich. 646, 127 N. W. 821, at page

822, the court says: "We are of the opinion that a nuisance involves, not only a defect, but threatening or impending danger to the public, or, if a private nuisance, to the property rights or health of persons sustaining peculiar relations to the same, and that the doctrine should be confined to such cases. While adjudicated cases have been so variable that courts generally regard a technical and comprehensive definition difficult if not impracticable, the trend of opinion seems to be that the circumstances must be examined with a view to ascertaining whether the alleged condition is one so serious as to interfere with the comfort of life and enjoyment of property, or so threatening as to constitute an impending danger to persons in the enjoyment of their legitimate rights."

In Everett v. Paschall, 61 Wash. 47, 111 P. 879, at page 881, 31 L. R. A. (N. S.) 827, Ann. Cas. 1912B, 1128, the opinion of the court upon this subject is expressed in the following language: "Nuisance is a question of degree, depending upon varying circumstances. There must be more than a tendency to injury. There must be something appreciable. The cases generally say, 'tangible, actual, measurable, or subsisting.' But in all cases, in determining whether the injury charged comes within these general terms, resort should be had to sound common sense. Each case must be judged by itself. Joyce on Nuisances, 19. Regard should be had for the notions of comfort and convenience entertained by persons generally of ordinary tastes and susceptibilities. Columbus Gaslight & Coke Co. v. Freeland, 12 Ohio St. 392; Barnes v. Hathorn, 54 Me. 124. The nuisance and discomfort must affect the ordinary comfort of human existence as understood by the American people in their present state of enlightenment. Joyce on Nuisances, § 20. The theories and dogmas of scientific men, though provable by scientific reference, cannot be held to be controlling unless shared by the people generally."

In regard to the limitations of the state in the matter of declaring nuisances, in Stockwell v. State, 110 Tex. 550, 221 S. W. 932, 934, 12 A. L. R. 1116, the court says:

"The State, in the exercise of its public power, may denominate certain things to be public nuisances, and because of their having that character provide for their summary abatement. This power is limited to declaring only those things to be such nuisances which are so in fact, since even the State may not denounce that as a nuisance which is not in fact. Tiedeman's Limitations of Police Power, Section 122a. The police power is subordinate to the Constitution, as is every other power of the government. Where the Legislature has found and defined, as expressed in its statute, a certain thing to be a public nuisance, only in clear cases would courts be warranted in going behind its findings and determining the contrary. But whether something not defined as a public nuisance by the statute is such under its general terms, is undoubtedly a judicial question."

In First Avenue Coal & Lumber Co. v. Johnston, 171 Ala. 470, 54 So. 598, on page 600, 32 L. R. A. (N. S.) 522, the following language is found: "In determining whether an alleged nuisance should be abated or its continuance enjoined, everything should be looked at from a reasonable point of view. The law does not regard trifles or very small inconveniences, but only those that are sensibly so; those which diminish the comfort or enjoyment of the complainants, or those sought to be relieved, or which sensibly diminish the value of property sought to be relieved from the effects of such alleged nuisance."

In Thomas v. City of Hot Springs, 34 Ark. 553, at page 558, 36 Am. Rep. 24, the discrimination which should be indulged in the matter of the exercise of police power is illustrated by the language of the court:

"No doubt a corporation may make it a penal offense for any person to drum customers to gaming-houses, gambling-tables, banks, etc., strumpet-houses, and other occupations which are immoral and pernicious in their character and tendencies, such as it has power under its charter to suppress.

"But the keeping of hotels, boarding-houses, bathhouses, and the practice of medicine, by competent persons, are ordinary, lawful and useful occupations, and to make it a crime to solicit custom for them, is an unwarranted interference with constitutional rights and privileges of citizens under our form of government.

"In this case appellant was charged and convicted for soliciting a patient to a physician, who was a graduate of medicine, and skilled, it is admitted, in his profession. It may be in bad taste, and a violation of the ethics of his profession, for a physician to employ a drummer to procure patients for him, but appellee had no legal power to make such drumming a crime, and punish it as such."

■■ Considering the set-up of this case in the light of the authorities above quoted, I am unable to bring myself to the conclusion that there has been other than an unwarranted and arbitrary purported exercise of the police power in the violation of plaintiff's rights under the provisions of the Fourteenth Amendment to the Federal Constitution. The basis of such an ordinance, as we have seen, must be the preservation and protection of the health, safety, morals, or welfare of the community. First, the plaintiff's business is an ordinary, usual, and legitimate one, which gives no offense to any recognized standards. Next, the calling at a private residence of a person upon any legitimate mission has generally been recognized as permissible. The ordinance in fact reflects upon its face that the transaction which it seeks to restrain is not a nuisance per se, because it only restrains persons from calling at such residences when not invited or requested by the occupant. If it were a true nuisance, then to have persons call at private residences for the purpose of taking orders for merchandise could not be permitted by even those who requested or invited it. If it is sought to be sustained upon the ground that the disturbance of the occupant of the house is the basis of the relief sought, it is not all comprehensive, because the occupant might still be subjected to other types of solicitors, including those soliciting alms. The matter of who comes to one's house is largely one to be regulated by the occupant and not by the city fathers, although the latter may have jurisdiction to define and determine the use of the streets, alleys, parks, and public places under their control. This is illustrated in the case of Ex parte Hogg, 70 Tex. Cr. R. 161, 156 S. W. 931, where the thought is expressed in the language of the syllabus as follows: "A municipal ordinance prohibiting the peddling of any merchandise in a public square or in any city street, but not prohibiting any one from following the business of peddling, was not invalid as an invasion of the personal right to follow a business or avocation."

■ The question before the court is one difficult to solve largely on account of the lack of precedent, although the books are full of cases involving the scope of the police power in which it is repeatedly said each case must rest upon its own facts and circumstances. Those cases which have been examined from the state courts, it is worthy of note, have usually been decided by a divided court. However, after giving due consideration to the rule that where it is fairly debatable whether there is propriety or wisdom in the passage of an ordinance, it is for the city and not the court to determine, yet I have not been able to bring myself to the conclusion that the ordinance in question is other than an arbitrary regulation in excess of the police power, not based upon any theory of the protection of the health, safety, morals, or general welfare of the citizens of the community, and is therefore in violation of the constitutional rights of the plaintiff.

For the reasons stated, the prayer of the complaint will be sustained, and findings, conclusions, and a decree may be filed and entered accordingly, awarding costs to plaintiff and reserving to defendant its proper exceptions.