# PRICE *v.* PEOPLE OF THE STATE OF ILLINOIS.

## ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 274. Argued May 12, 1915.—Decided June 21, 1915.

This court accepts the decision of the highest court of the State as to the construction of a pure food statute and whether specified articles are included within the prohibitions thereof, and then determines whether, as so construed, the statute is valid under the Federal Constitution.

The police power of the State extends to imposing restrictions having reasonable relation to preserving the health of its people.

The nature and extent of such restrictions are matters for legislative judgment in defining the policy of the State, and are within the power of the State unless palpably unreasonable and arbitrary.

A prohibition against the sale of food preservatives containing boric acid is not so unreasonable and arbitrary as to amount to deprivation of property without due process of law.

It is not enough to condemn a police statute as unconstitutional under the due process clause that the innocuousness of the prohibited article be debatable; for if debatable the legislature is entitled to its own judgment.

In enacting a police statute the legislature is not limited to general directions, but may prohibit the sale of such specific articles as it deems injurious.

The legislature may estimate degrees of evil and adjust its legislation according to the existing exigency; and, without offending the equal protection provision of the Constitution, may prohibit the sale of particular articles—such as food preservatives containing boric acid—if it does not exceed bounds of reasonable classification.

This court will not assume that goods are shipped from State to State in small retail packages, and where the character of the shipment is not shown, such packages cannot be classed with the "original packages" within the rule protecting such packages from subjection to the police laws of the State.

In this case no question of the conflict of the state law with action by Congress in regard to interstate shipment of food is involved.

The provisions of the Pure Food Law of Illinois of 1907 prohibiting sale of food preservatives containing boric acid are not unconstitu-

tional under the due process or equal protection clauses of the Fourteenth Amendment, or as to the sales within that State of the articles involved in this action in the packages in which they were sold, under the Commerce Clause of the Federal Constitution.

257 Illinois, 587, affirmed.

THE facts, which involve the constitutionality under the Fourteenth Amendment of the Pure Food Statute of Illinois of 1907, are stated in the opinion.

*Mr. Trafford N. Jayne* for plaintiff in error.

*Mr. Lester H. Strawn,* Assistant Attorney General of the State of Illinois, with whom *Mr. Patrick J. Lucey,* Attorney General of the State of Illinois, was on the brief, for defendant in error.

MR. JUSTICE HUGHES delivered the opinion of the court.

This is a writ of error to review a judgment of the Supreme Court of Illinois, which affirmed a judgment of the Municipal Court of Chicago, finding the plaintiff in error guilty of a violation of the 'Pure Food' statute of that State and imposing a fine. 257 Illinois, 587.

The violation consisted of a sale in Chicago of a preservative compound known as 'Mrs. Price's Canning Compound' alleged to be intended as a 'preservative of food' and to be 'unwholesome and injurious in that it contained boric acid.'

The statute (Laws of Illinois, 1907, p. 543, §§ 8 and 22, Ch. 127b; Hurd's Rev. Statutes, 2209, 2213, 2218) provides:

"§ 8. DEFINES ADULTERATION.] That for the purpose of this act an article shall be deemed to be adulterated: . . .

"In case of food: . . .

"Fifth—If it contains any added poisonous or other added deleterious ingredient which may render such article injurious to health: *Provided,* that when in the preparation of food products for shipment they are preserved by an external application, applied in such a manner that the preservative is necessarily removed mechanically, or by maceration in water, or otherwise, and directions for the removal of said preservatives shall be printed on the covering of the package, the provisions of this act shall be construed as applying only when such products are ready for consumption; and formaldehyde, hydrofluoric acid, boric acid, salicylic acid and all compounds and derivatives thereof are hereby declared unwholesome and injurious. . . .

"§ 22. SALE OF PRESERVATIVES PROHIBITED.] No person, firm or corporation shall manufacture for sale, advertise, offer or expose for sale, or sell, any mixture or compound intended for use as a preservative or other adulterant of milk, cream, butter or cheese, nor shall he manufacture for sale, advertise, offer or expose for sale, or sell any unwholesome or injurious preservative or any mixture or compound thereof intended as a preservative of any food: *Provided, however,* that this section shall not apply to pure salt added to butter and cheese."

A trial by jury was waived. There was a stipulation of facts setting forth, in substance, that the defendant had sold in Chicago two packages of the preservative in question; that the compound contained 'boric acid'; that the label on the packages bore the following statement: "It is not claimed for this Compound that it contains anything of food value, but it is an antiseptic preparation, and among its many uses may be employed to prevent canned fruits and vegetables from souring and spoiling"; that the preservative was not offered for sale or sold in any food product, but only separately as a preservative; and that the defendant was accorded a hearing before

the State Food Commission pursuant to the provisions of the Food law.

There was also introduced in evidence on behalf of the State an envelope, used for enclosing the compound, upon which were statements as to its uses, prices, etc. It was thus stated that the preservative could be used 'in canning all kinds of fruit,' and was 'especially valuable for corn, beans, peas,' etc. There was also the statement on the envelope that the contents 'of this package' were sufficient for 'four quarts' and that the retail prices were from ten cents for one 'package' to one dollar for fifteen 'packages.' That was the case for the State.

A motion to dismiss was denied. The plaintiff then made an offer of proof, and thereupon it was stipulated that a witness in court, if sworn, would testify that the "Price Canning Compound is an article of commerce, which has been sold under that distinct name for a period of years, with the ingredients and in the proportions contained in the sample taken by the Food Department, which is the subject of this suit; that it has acquired a wide reputation over a large number of States in the Union as a distinctive article, used for canning by the housewife"; that "it is not sold to manufacturers of food or canners of food for sale"; and that "boric acid is a constituent part of the compound and has been such during all the time that the compound has been sold."

Objection to evidence offered that "there is no added ingredient of any kind whatever, whether it be injurious, deleterious, or otherwise," was sustained as not being addressed to the charge made. The defendant (the plaintiff in error) also offered to prove "that boric acid is not injurious to health or to the human system" and that the "Price Canning Compound is not adulterated or mislabeled in any way." The offer was rejected, and the defendant excepted. In response to a further offer, it was conceded that the witness, if placed upon the stand, would

testify that the compound "is an article of commerce, sold in Illinois in the original package manufactured in Minnesota."

Upon this state of the record, the contention of the plaintiff in error that the statute was inapplicable, or, if applicable, was repugnant to the constitution of the State, and to the Commerce Clause and the Fourteenth Amendment of the Federal Constitution, were overruled.

The Supreme Court of the State thus construed the statute:

"We will first notice the objection of plaintiff in error that section 8 deals only with foods; that the declaration in that section that boric acid is injurious and unwholesome is limited to foods containing that substance as an added ingredient, and has no application to a preservative which is not, and does not purport to be a food.

"Both sections 8 and 22 are parts of one act, and the act as a whole, should be so construed as to give effect to its manifest purpose and intent. Its main purpose is to protect health by preventing adulteration of food by any unwholesome and injurious ingredient. Boric acid is declared to be unwholesome and injurious, and the sale of any food to which it is an added ingredient is prohibited. It was well known to the legislature that various compounds are manufactured and sold for preserving foods of different kinds. If such preservatives contain unwholesome and injurious ingredients, their use by the housewife, or any one else, in preserving fruits or food, would be as injurious to the health as if they had been added by a dealer or manufacturer to fruits or other foods before placing them on the market. The object of the act is to protect the public health by preventing dealers from selling food to which had been added, for the purpose of preserving it, ingredients injurious to the health, or from selling any compound as a preservative which contained any such ingredients. The prohibition is not against the

sale of all preservatives, but is against only unwholesome
or injurious preservatives. . . . It is just as impor-
tant to prohibit the sale to the housewife of a compound
containing boric acid, to be used by her to preserve fruits
and vegetables put up by her for family use, as it is to
prohibit the sale of fruits and vegetables after such an
ingredient has been added. We think the reasonable
construction of the act to be that the prohibition against
boric acid is not limited to foods to which it is an added
ingredient, but extends to compounds sold as a food
preservative which contain boric acid. The danger to
health is as great from one as the other, and the prohibi-
tion of both was necessary to effect the evident purpose of
the legislature." 257 Illinois, pp. 592, 593.

The plaintiff in error challenges the correctness of this
construction, but this question is simply one of local law
with which we are not concerned. We accept the decision
of the Supreme Court of the State as to the meaning of the
statute, and, in the light of this construction, the validity
of the act under the Federal Constitution must be deter-
mined. *Missouri Pacific Ry.* v. *Nebraska*, 164 U. S. 403,
414; *W. W. Cargill Co.* v. *Minnesota*, 180 U. S. 452, 466;
*Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 73;
*Purity Extract Co.* v. *Lynch*, 226 U. S. 192, 198.

The first Federal question is presented by the contention
that the statute, as applied, effects a deprivation of prop-
erty without due process of law and a denial of the equal
protection of the laws contrary to the Fourteenth Amend-
ment.

The State has undoubted power to protect the health of
its people and to impose restrictions having reasonable
relation to that end. The nature and extent of restrictions
of this character are matters for the legislative judgment
in defining the policy of the State and the safeguards re-
quired. In the avowed exercise of this power, the legisla-
ture of Illinois has enacted a prohibition—as the statute is

construed—against the sale of food preservatives containing boric acid. And unless this prohibition is palpably unreasonable and arbitrary we are not at liberty to say that it passes beyond the limits of the State's protective authority. *Powell* v. *Pennsylvania*, 127 U. S. 678, 686; *Crowley* v. *Christensen*, 137 U. S. 86, 91; *Holden* v. *Hardy*, 169 U. S. 366, 395; *Capital City Dairy Co.* v. *Ohio*, 183 U. S. 238, 246; *Jacobson* v. *Massachusetts*, 197 U. S. 11, 25; *Silz* v. *Hesterberg*, 211 U. S. 31, 39; *McLean* v. *Arkansas*, 211 U. S. 539, 547; *Chicago, Burlington & Quincy R. R.* v. *McGuire*, 219 U. S. 549, 569; *Purity Extract Co.* v. *Lynch, supra; Hammond Packing Co.* v. *Montana*, 233 U. S. 331, 333. The contention of the plaintiff in error could be granted only if it appeared that by a consensus of opinion the preservative was unquestionably harmless with respect to its contemplated uses, that is, that it indubitably must be classed as a wholesome article of commerce so innocuous in its designed use and so unrelated in any way to any possible danger to the public health that the enactment must be considered as a merely arbitrary interference with the property and liberty of the citizen. It is plainly not enough that the subject should be regarded as debatable. If it be debatable, the legislature is entitled to its own judgment, and that judgment is not to be superseded by the verdict of a jury upon the issue which the legislature has decided. It is not a case where the legislature has confined its action to the prohibition of that which is described in general terms as unwholesome or injurious, leaving the issue to be determined in each case as it arises. The legislature is not bound to content itself with general directions when it considers that more detailed measures are necessary to attain a legitimate object. *Atlantic Coast Line* v. *Georgia*, 234 U. S. 280, 288. Legislative particularization in the exercise of protective power has many familiar illustrations. The present case is one of such particularization, where the statute—read as the

state court reads it—specially prohibits preservatives containing boric acid. The legislature thus expressed its judgment and it is sufficient to say, without passing upon the opinions of others adduced in argument, that the action of the legislature cannot be considered to be arbitrary. Its judgment appears to have sufficient support to be taken out of that category. See *Hipolite Egg Co.* v. *United States,* 220 U. S. 45, 51; Circular No. 15 (June 23, 1904), Bureau of Chemistry; Food Inspection Decision 76 (July 13, 1907); Bulletin (December 31, 1914), Bureau of Chemistry;—U. S. Department of Agriculture.

It is further urged that the enactment, as construed, contains an unconstitutional discrimination against the plaintiff in error, but in this aspect, again, the question is whether the classification made by the legislature can be said to be without any reasonable basis. The legislature is entitled to estimate degrees of evil and to adjust its legislation according to the exigency found to exist. And, applying familiar principle, it cannot be said that the legislature exceeded the bounds of reasonable discretion in classification when it enacted the prohibition in question relating to foods and compounds sold as food preservatives. *Ozan Lumber Co.* v. *Union County Bank,* 207 U. S. 251, 256; *Heath & Milligan Co.* v. *Worst,* 207 U. S. 338, 354; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78; *Mutual Loan Co.* v. *Martell,* 222 U. S. 225, 235; *Eberle* v. *Michigan,* 232 U. S. 700, 706; *Keokee Coke Co.* v. *Taylor,* 234 U. S. 224, 227; *Miller* v. *Wilson,* 236 U. S. 373, 383, 384. We find no ground for holding the statute to be repugnant to the Fourteenth Amendment.

The remaining contention is that the statute as applied violates the Commerce Clause. Treating the article as one on a footing with adulterated food, the power of the State to prohibit sales within its borders is broadly asserted on its behalf. On the other hand, the plaintiff in error insists that the compound is not an adulterated

food, and was not charged to be such, but was an article of commerce manufactured in another State; and that whatever may be the power of the State of Illinois over manufacture and sale apart from interstate commerce, the State could not prohibit its introduction and sale in the course of interstate commerce. It is not necessary, however, to deal with the question in the scope thus suggested. The sole ground for invoking the Commerce Clause in order to escape the restrictions of the state law is sought to be found in the doctrine with respect to sales in original packages. *Brown* v. *Maryland*, 12 Wheat. 419; *Leisy* v. *Hardin*, 135 U. S. 100; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1, 22, 23. The record, however, is wholly insufficient to support the contention. The stipulation of facts read in evidence by the State set forth that the defendant had sold in Chicago 'two packages' of the compound. The State then introduced in evidence an 'envelope used for enclosing the compound.' This, among other things, bore a statement that the content of "this package is sufficient for four quarts." And it set forth prices as follows: "Retail Price. 1 Package 10c. 3 Packages 25c. 7 Packages 50c. 15 Packages $1.00." The clear inference from this evidence was that the compound was offered for sale at retail in small packages (in envelopes) suitable for the consumer. The defendant made an offer of proof, and in lieu of the offered testimony it was conceded that the witness, if sworn, would testify that the compound mentioned in the statement of claim "is an article of commerce sold in Illinois, in the original package manufactured and made in Minnesota." As to the nature of the package, nothing more was shown. All that was admitted was entirely consistent with the view that the original package referred to was simply the small package in the envelope which the State had described, and no error can be charged to the state court in so regarding it. Nothing appeared as to the character

of the shipment from Minnesota to Illinois, and it would be wholly unjustifiable to assume that, in commercial shipments into the State, the small package was segregated or separately introduced. If these small packages were associated in their shipment into the State, as they naturally would be, and were subsequently sold separately or in various lots, these separate packages although respectively in the original envelopes would not be classed as 'original packages' within the rule invoked, so as to escape the local law governing domestic transactions. We have repeatedly so held, in cases not materially different in this respect. *Austin* v. *Tennessee*, 179 U. S. 343; *Cook* v. *Marshall County*, 196 U. S. 261; *Purity Extract Co.* v. *Lynch*, 226 U. S. 192, 199–201. The testimony offered by the plaintiff in error, and treated as received, taken in connection with what had already been proved as to the character of the packages put up for retail sale, fell far short of the proof required to constitute a defence upon the ground that the state law, otherwise valid, was applied in contravention of the Commerce Clause.

It should be added that no question is presented in the present case as to the power of Congress to make provision with respect to the immediate containers (as well as the larger receptacle in which the latter are shipped) of articles prepared in one State and transported to another, so as suitably to enforce its regulations as to interstate trade. *McDermott* v. *Wisconsin*, 228 U. S. 115, 135. It does not appear that the state law as here applied is in conflict with any Federal rule.

*Judgment affirmed.*