## PACIFIC STATES BOX & BASKET CO. v. GEHLAR, State Director of Agriculture, et al.

No. E–9443.

District Court, D. Oregon.

Dec. 21, 1934.

Arthur A. Goldsmith, of Portland, Or., and Hanna & Morton and Byron C. Hanna, both of Los Angeles, Cal., for plaintiff.

342

I. H. Van Winkle, Atty. Gen., and Willis S. Moore, Asst. Atty. Gen., for defendants.

Before GARRECHT, Circuit Judge, and McNARY and FEE, District Judges.

McNARY, District Judge.

This is a suit to enjoin the defendants from enforcing orders of the department of agriculture of Oregon fixing standard containers for strawberries and raspberries, made in pursuance of sections 18-2902 and 18-2911 of the Oregon Code 1930. The orders provide that the standard containers for such fruits shall be:

"Raspberries

"Crate—24-pint hallocks, 5⅛ inches deep, 16⅝ inches wide, and 23¼ inches long, all inside measurements. Center partition ¾ inches, ends and partition grooved for double deck. Size of hallock, 2x5¼x5¼ inches, outside measurements. Bottom set up ¾ inch, inside depth 1¼ inches.

"Strawberries

"Crate—24-pint hallocks, 6⅜ inches deep, 13¾ inches wide, and 19¼ inches long, all inside measurements. Half inch center piece. Size of hallocks 2½x4⅜x4⅜ inches outside measurements, bottom set up ¾ inch, inside depth 1¾ inches."

Plaintiff alleges that for many years past it has been engaged in the business of manufacturing in the state of California containers for strawberries and raspberries, made of two thin strips of wood crossing each other to form the bottom and bent upwards to form the sides, reinforced with a narrow metal strip to protect the baskets and the contents, and to insure uniformity of cubic measure. When constructed, the containers have an opening to insure ventilation, and a cubic content of one pint. That for the past nine years the plaintiff has sold its containers to dealers in the state of Oregon in large quantities, and they are in common use throughout the United States. That the type of containers mentioned in the orders must be made from spruce grown only in the Northwest, and cannot be manufactured by plaintiff without expensive change in its machinery. That the orders when enforced will prevent plaintiff from selling its containers in Oregon, although they have the same cubic content and provide the same or better protection for fruit than the standard containers. That there is no necessity for the orders based upon considerations of public health, or to prevent fraud or deception or other

than legitimate use of the police power. That said orders were made and promulgated arbitrarily, capriciously, and without justification, and are void because they deprive plaintiff of its property without due process of law and without equal protection of the law, and that the orders are void because they interfere with and impose unlawful burdens on interstate commerce and the business of plaintiff, in violation of the Constitution of the United States (Amend. 14).

The matter is before the court on plaintiff's motion for an interlocutory injunction and defendant's motion to dismiss the bill of complaint on the ground that it does not state facts sufficient to entitle plaintiff to the relief demanded.

In Oregon large quantities of strawberries and raspberries are raised and sold in local and distant markets. Success of this industry is, not only vital to a large number of growers, but has an important bearing on the economic life of the state.

It is a matter of general knowledge that enforced standardization of containers is essential to the economic handling, shipping, and selling of horticultural products, for, among other reasons, it prevents fraud and deception in sales, provides the best method of stowage, and eliminates many sizes that complicate the problems of transportation.

Legislation designed to aid and promote the industry in the manner provided by the Oregon laws falls within the legitimate use of the police power of the state.

The issue tendered as to the necessity of such legislation, based upon considerations of public health or to prevent fraud or deception, was effectively answered by the Legislature in passing laws authorizing and empowering the department of agriculture to fix and promulgate standard containers, and making noncompliance therewith a misdemeanor, and its determination will not be interfered with by this court unless it plainly appears that the constitutional rights of plaintiff have been violated.

Schmidinger v. Chicago, 226 U. S. 578, 33 S. Ct. 182, 184, 57 L. Ed. 364, Ann. Cas. 1914B, 284, involved the validity of an ordinance of the city of Chicago fixing weight standards for loaves of bread. The court said: "This court has frequently affirmed that the local authorities intrusted with the regulation of such matters, and not the courts, are primarily the judges of the necessities of local situations calling for such legislation, and the courts may only interfere with laws

or ordinances passed in pursuance of the police power where they are so arbitrary as to be palpably and unmistakably in excess of any reasonable exercise of the authority conferred. Jacobson v. Massachusetts, 197 U. S. 11, 25 S. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765; Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205; Minnesota v. Barber, 136 U. S. 313, 320, 10 S. Ct. 862, 34 L. Ed. 455, 458, 3 Interst. Com. R. 185; Atkin v. Kansas, 191 U. S. 207, 223, 24 S. Ct. 124, 48 L. Ed. 148, 158; McLean v. Arkansas, 211 U. S. 539, 29 S. Ct. 206, 53 L. Ed. 315."

Powell v. Pennsylvania, 127 U. S. 678, 8 S. Ct. 992, 1257, 32 L. Ed. 253, was a suit to test the validity of a statute of Pennsylvania relating to the manufacture and sale of oleomargarine butter. The court said, page 686 of 127 U. S., 8 S. Ct. 992, 996: "The legislature of Pennsylvania, upon the fullest investigation, as we must conclusively presume, and upon reasonable grounds, as must be assumed from the record, has determined that the prohibition of the sale, or of offering for sale, or having in possession to sell, for purposes of food, of any article manufactured out of oleaginous substances or compounds other than those produced from unadulterated milk, or cream from unadulterated milk, to take the place of butter produced from unadulterated milk, or cream from unadulterated milk, will promote the public health, and prevent frauds in the sale of such articles. If all that can be said of this legislation is that it is unwise, or unnecessarily oppressive to those manufacturing or selling wholesome oleomargarine as an article of food, their appeal must be to the legislature, or to the ballot-box, not to the judiciary. The latter cannot interfere without usurping powers committed to another department of government." Price v. People of State of Illinois, 238 U. S. 447, 35 S. Ct. 892, 59 L. Ed. 1400; Hebe Co. v. Shaw, 248 U. S. 297, 39 S. Ct. 125, 63 L. Ed. 255; Radice v. People of State of New York, 264 U. S. 292, 44 S. Ct. 325, 68 L. Ed. 690; Hardware Dealers Mut. Fire Insurance Co. v. Glidden Co., 284 U. S. 151, 52 S. Ct. 69, 76 L. Ed. 214.

The containers are so unlike in design, strength, and material used that it requires skill and experience in the handling and shipping of fruit to compare intelligently their respective advantages. It is presumed that the authorized legislative agency fully and fairly considered all the facts relating to the merits of the containers manufactured by plaintiff, as well as those adopted as the standards, and its determination as culminated in the orders was a finding that the standards so fixed were better adapted to carry out the beneficial objects of the legislation.

Whether the department of agriculture acted wisely in making its selections, or whether the containers manufactured by the plaintiff are as well or better adapted to the intended use, does not present a subject for judicial review. The power of this court to adjudicate matters of that nature is limited to cases where it appears from the facts alleged that the orders are so clearly arbitrary and discriminatory as to invade the rights secured to plaintiff by the organic law. Facts essential to raise such an issue do not appear in the record.

■ It is contended that the orders are void because they interfere with and impose unlawful burdens on interstate commerce and the business of plaintiff.

There is nothing in the law which would indicate that the Oregon Legislature intended to encroach upon the exclusive powers of Congress to regulate interstate commerce, but, on the contrary, the law expressly excludes from its operation products brought from outside the state and offered for sale or consignment in the original packages. However, the plaintiff will not be denied the right to ship its containers through the channels of interstate commerce, for the orders will not affect the containers until they have lost their character as such commerce and have been sold to dealers and used in the selling and shipping of fruit.

■ The commerce clause of the United States Constitution (art. 1, § 8) protects only that which is the subject of interstate commerce and transported over lines of interstate communication. When the property arrives in the state of its destination, and passes from the importer to the buyer to be used in intrastate trade, it ceases to be an article of interstate commerce and becomes a part of the general property of the state and amenable to its laws.

■ The question when the paramount power of congress terminates and that of the state begins came directly before the Supreme Court of the United States for the first time in the case of Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678, and the court, through Mr. Chief Justice Marshall, held that an article authorized by a law of congress to be imported continued to be a part of the foreign commerce of the country while it remained in the hands of the importer for

sale, in the original bale, package, or vessel in which it was imported; that the authority given to import necessarily carried with it the right to sell the imported article in the form and shape in which it was imported, and that no state, either by direct assessment or by requiring a license from the importer before he was permitted to sell, could impose any burden upon him or the property imported beyond what the law of Congress had itself imposed; but that when the original package was broken up for use or for retail by the importer, and also when the commodity had passed from his hands into the hands of a purchaser, it ceased to be an import, or a part of foreign commerce, and became subject to the laws of the state, and might be taxed for state purposes, and the sale regulated by the state, like any other property.

This ruling has been followed in many later cases.

The motion for an interlocutory injunction will be denied, and the motion to dismiss will be allowed.