(No. 24315.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* THE QUALITY PROVISION CO. INC. *et al.*—(THE QUALITY PROVISION CO. INC., Appellant.)

*Opinion filed December 17, 1937—Rehearing denied Feb. 2, 1938.*

THOMAS H. RILEY, for appellant.

OTTO KERNER, Attorney General, (LOUIS SALINGER, of counsel,) for the People.

Mr. CHIEF JUSTICE FARTHING delivered the opinion of the court:

The People of the State of Illinois brought an action in debt in the municipal court of Chicago under section 41 of the Pure Food act, (Ill. Rev. Stat. 1937, chap. 56½, par. 44,) which resulted in the appellant being found guilty and fined $15. By this appeal it challenges the validity of

section 8 of that act. It is contended that the effect of the statute is to deprive appellant of its property without due process of law contrary to section 2 of article 2 of the Illinois constitution and the fourteenth amendment to the Federal constitution.

The testimony shows that the appellant, following a long usage, added sodium sulphite in the proportion of twelve ounces to one thousand pounds of meat in making its pork sausage. It used fresh pork to which it added fresh beef, cereals, condiments, and the sulphite as a preservative. Sodium sulphite causes fresh meat to retain its color and postpones decomposition and putrefaction. If added to stale, discolored or partly decomposed or putrified meat, it restores the natural color to some extent and will deodorize such meat. In the case of spoiled chickens treated with sulphite, only the most discriminating persons can tell, after such fowls are cooked, that they had begun to decompose. Pork sausage is and can be made and sold without the use of this preservative. Sodium sulphite is used medicinally, but there is a difference of opinion as to whether its use as a preservative in fresh meats is harmful. The ordinary person cannot tell that meat has been treated with sodium sulphite and may thereby be deceived and purchase meat he would not otherwise want.

There was no testimony to show that sodium sulphite was a derivative of sulphurous acid and for this and other reasons, appellant says the trial court erred in refusing to direct a verdict. Appellee says that the very definitions of sodium sulphite, sulphurous acid and sulphite, show that it is such a derivative, and that hence no such testimony was required.

Webster's New International Dictionary, (2d ed.) unabridged, defines sulphurous acid as: "An acid, $H_2SO_3$, not known in the free state except as a solution of sulphur dioxide in water, but forming a well known series of salts (the sulphite.)" It also defines sodium sulphite as: "Specif.,

the normal salt, $NA_2SO_3$ obtained as colorless crystals or a white powder. It is a reducing agent, and is used in photography, (chiefly as a preservative in developers,) in medicine, in bleaching, as an antichlor, food preservative, etc." Sulphite is defined as "a salt or ester of sulphurous acid." From these definitions it is plain that sodium sulphite is a derivative of sulphurous acid. Appellant's contention that testimony to that effect was required because sodium sulphite may be produced by a process not involving the use of sulphurous acid, must be overruled.

It was charged that appellant violated the fourth and fifth specifications of section 8 of the Pure Food act, relating to foods, which provide: "That for the purpose of this act, an article shall be deemed to be adulterated * * * Fourth—If it be mixed, colored, powdered, coated, polished, or stained in any manner whereby damage or inferiority is concealed, or it is made to appear better or of greater value than it really is. Fifth—If it contains any poisonous or deleterious ingredient which may render such article injurious to health: * * * and formaldehyde, hydrofluoric acid, boric acid, salicylic acid, and sulphurous acid and all compounds and derivatives thereof are hereby declared unwholesome and injurious." The specific violations charged were, that appellant offered for sale and sold pork sausage adulterated in that it contained a derivative of sulphurous acid, and in that the sausage was mixed with sulphite in such a manner that inferiority was concealed and it was made to appear of greater value than it really was.

Before the reference to sulphurous acid and its derivatives was added by the 1931 amendment, (Laws of 1931, p. 609,) section 8 was upheld, when similarly attacked, in *People* v. *Price*, 257 Ill. 587, affirmed in *Price* v. *Illinois*, 238 U. S. 446, 59 L. ed. 1400. That case involved "Mrs. Price's Canning Compound," a food preservative which contained boric acid. The compound had been used in several States for many years. In that case, at page 592, we said

of the act: "Its main purpose is to protect health by preventing adulteration of food by any unwholesome and injurious ingredient. Boric acid is declared to be unwholesome and injurious, and the sale of any food to which it is an added ingredient is prohibited. It was well known to the legislature that various compounds are manufactured and sold for preserving foods of different kinds. If such preservatives contain unwholesome and injurious ingredients, their use by the housewife, or anyone else, in preserving fruits or food, would be as injurious to the health as if they had been added by a dealer or manufacturer to fruits or other foods before placing them on the market. The object of the act is to protect the public health by preventing dealers from selling food to which had been added, for the purpose of preserving it, ingredients injurious to the health, or from selling any compound as a preservative which contained any such ingredients. The prohibition is not against the sale of all preservatives, but is against only unwholesome or injurious preservatives. * * * We think the reasonable construction of the act to be that the prohibition against boric acid is not limited to foods to which it is an added ingredient, but extends to compounds sold as a food preservative which contain boric acid. The danger to health is as great from one as the other, and the prohibition of both was necessary to effect the evident purpose of the legislature.

"It is also contended that boric acid is not, in fact, unwholesome and injurious; that the court erred in refusing to hear evidence upon that question, and if the declaration that boric acid is unwholesome and injurious obviates the necessity for proof of that fact, it violates section 2 of article 2 of our State constitution and the provision of the fourteenth amendment to the constitution of the United States, to the effect that no person shall be deprived of liberty or property without due process of law. * * * It may be conceded the legislature has no authority to forbid

the sale of a known wholesome article of food, but it is certain boric acid is not so universally conceded or known to be wholesome that judicial notice will be taken of it. Whether it is or not is a matter of dispute. In such cases, in enacting legislation in the exercise of the police power of the State the legislative declaration that it is unwholesome must be accepted by the courts, and they will not investigate the facts for the purpose of determining whether the declaration of the legislature was warranted by the facts." Citing cases.

The Supreme Court of the United States, at page 451, said, in affirming this court: "The State has undoubted power to protect the health of its people and to impose restrictions having reasonable relation to that end. The nature and extent of restrictions of this character are matters for the legislative judgment in defining the policy of the State and the safeguards required. In the avowed exercise of this power, the legislature of Illinois has enacted a prohibition—as the statute is construed—against the sale of food preservatives containing boric acid. And unless this prohibition is palpably unreasonable and arbitrary we are not at liberty to say that it passes beyond the limits of the State's protective authority. [Citing cases.] The contention of the plaintiff in error could be granted only if it appeared that by a consensus of opinion the preservative was unquestionably harmless with respect to its contemplated uses; that is, that it indubitably must be classed as a wholesome article of commerce so innocuous in its designed use and so unrelated in any way to any possible danger to the public health that the enactment must be considered as a merely arbitrary interference with the property and liberty of the citizen. It is plainly not enough that the subject should be regarded as debatable."

In *Houston* v. *St. Louis Independent Packing Co.* 249 U. S. 479, 63 L. ed. 717, it was held that courts will not disturb the finding and order of the Secretary of Agricul-

ture, fairly arrived at and having substantial evidence to support it. It was further held that the use of the word "sausage" in connection with the manufacture and sale in interstate commerce of a meat product containing cereal in excess of two per cent, and water or ice in excess of three per cent, was calculated to deceive purchasers and consumers and hence should be prohibited. The act of Congress involved forbade sales of meat or meat food products under a false or deceptive name and empowered the Secretary of Agriculture to make rules and regulations for its efficient administration. These decisions apply with equal force to the prohibition of the use of sulphurous acid and its derivatives and sustain the constitutionality of the section of the act in question.

A different situation was presented in *Carolene Products Co.* v. *McLaughlin,* 365 Ill. 62, and in *People* v. *Carolene Products Co.* 345 id. 166, relied on by appellant, where the thing sought to be condemned by the legislature was the addition of a known wholesome food product to milk. We held that such legislation was not a valid exercise of the police power.

Within the limits above indicated the legislature has the power to determine what preservatives are harmful and injurious to the public health. It can declare sulphurous acid and its derivatives adulterants and forbid their use in food products. It is immaterial that appellant added sodium sulphite only to fresh meats. This addition constitutes an adulteration and the opportunity for deceiving the consumer is thereby created and fostered.

For the reasons stated the judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*