**QUALITY FOOD PRODUCTS, INC.,**
**Plaintiff,**

v.

**Richard BEARD, Commissioner of the Department of Industry and Agriculture of the State of Alabama, Defendant.**

**Civ. A. No. 2629–N.**

United States District Court
M. D. Alabama, N. D.

June 4, 1968.

**352**

R. Larry Turner and E. Lee Redfern, Atlanta, Ga., for plaintiff.

MacDonald Gallion, Atty. Gen., Gordon Madison and George O. Miller, Asst. Attys. Gen., State of Alabama, Montgomery, Ala., for defendant.

Before RIVES, Circuit Judge, and JOHNSON and ALLGOOD, District Judges.

ALLGOOD, District Judge.

This is an action by Quality Food Products, Inc., for a declaratory judgment that Title 2, Section 189, Code of Alabama, 1940, is violative of the Constitution of the United States. Injunctive relief is also sought to restrain enforcement of this statute by the defendant State official, the Commissioner of Agriculture and Industries; therefore, a three-judge court heard the case pursuant to Title 28, U.S.C.A. Sections 2281 and 2284.

Plaintiff alleges that it was taking steps preparatory to sale, through local outlets in Alabama, of its milk product or imitation milk which consists of a mixture of vegetable oil, dried or powdered milk and other ingredients under its trade name "Farmer's Daughter Imitation Milk", and that the defendant State official advised him that the statute here involved prohibits the sale of this milk product.

The challenged statute forbids for sale purposes the adding of any "fat or oil other than milk fat to, or blend or compound the same with any milk, cream or skimmed milk"[1] . . . . Similar statutes, known as "filled milk" laws, have been enacted by other states and also by the Congress of the United States.

The plaintiff's testimony was to the effect that its product, a fresh fluid imitation milk, is wholesome, healthful, and

1. Title 2, § 189, Code of Alabama: "*Adding or blending fat or oil with milk or cream.*—No person himself or by his servant or agent shall for the purpose of sale or exchange, add any fat or oil other than milk fat to, or blend or compound the same with, any milk, cream or skimmed milk, whether or not condensed, evaporated, concentrated, powdered, dried or desiccated, nor shall any person himself, or by his servant or agent sell, any milk, cream or skimmed milk in any of the aforesaid forms to which has been added or with which has been blended or compounded any fat or oil other than milk fat."

contained the nutritional qualities of natural milk. The defendant offered testimony to contradict the fact that the product is as nutritional as natural milk, and that some of plaintiff's claims concerning the food or nutritional value of its product are deceptive and misleading. The testimony also disclosed that plaintiff's product is, by its taste, appearance and texture, indistinguishable from natural milk; that the consumer would not be able to recognize the difference; that defendant's cartons are the same type, size and shape as cartons in which natural milk is sold and that these cartons contained deceptive and misleading information. The plaintiff offered testimony together with exhibits that other products containing vegetable oil and milk solids are being sold in Alabama, but the defendant's testimony was to the effect that these products are entirely different from the plaintiff's product as such products are not milk or dairy products and are easily distinguishable from whole milk.

Plaintiff contends that the statute in question is violative of the Constitution of the United States and, specifically, that it violates the Fifth and Fourteenth Amendments thereof and that the defendant is applying the provisions of the Alabama statute in an unconstitutional or discriminatory manner in violation of the equal protection clause of the Fourteenth Amendment because of permitting the sale of other products that contain some of the same ingredients.

Authorities cited by counsel disclose that the constitutionality of so-called "filled milk" statutes enacted by other states and by the Congress of the United States has been the subject of extensive litigation involving their constitutional validity. The validity of the Federal Filled Milk Statute has several times been upheld by the Federal courts, including the Supreme Court of the United States. A number of State Supreme Courts have upheld the constitutional validity of State filled milk laws while in other states such laws have been declared invalid.

In each case where the Supreme Court of the United States and lower Federal courts have ruled upon the validity of a State statute of this type, the court has upheld the statute as a valid enactment within the authority of the police power of the State. Hebe Co. v. Shaw, 248 U. S. 297, 39 S.Ct. 125, 63 L.Ed. 255; Sage Stores Company v. State of Kansas ex rel. Mitchell, 323 U.S. 32, 65 S.Ct. 9, 89 L.Ed. 25; also, United States v. Carolene Products Company, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234, where the Supreme Court approved its earlier ruling in Hebe Co. v. Shaw, supra.

Plaintiff's contention that the Alabama filled milk law is violative of the Fourteenth Amendment of the Constitution of the United States is predicated upon its being violative of the due process clause and the equal protection clause. Its argument regarding the due process clause is based upon complete prohibition by the statute of the sale of filled milk. This contention has been rejected by the United States Supreme Court in Hebe Co. v. Shaw, supra, as the court declared: "We are satisfied that the statute * * * is not invalidated by the Fourteenth Amendment." Later in United States v. Carolene Products Company, supra, the Supreme Court in deciding that the Federal filled milk statute did not violate the due process clause of the Fifth Amendment in commenting upon its earlier ruling in Hebe Co. v. Shaw, stated, "We see no persuasive reason for departing from that ruling here, where the Fifth Amendment is concerned * * *." To like effect is a decision of the Supreme Court of the United States in Sage Stores Company v. State of Kansas, ex rel. Mitchell, supra, in upholding the validity of the Kansas filled milk law.

The judicial decisions disclose that one of the reasons for enactment of filled milk laws is to prevent confusion, deception, substitution and possible fraud upon the consuming public in the sale of this substitute product because of its likeness to natural milk. This reason alone has been declared sufficient

to sustain a complete prohibition. In Carolene Products Company v. United States, 323 U.S. 18, 65 S.Ct. 1, 89 L.Ed. 15, and in Sage Stores Company v. State of Kansas ex rel. Mitchell, supra, the Supreme Court concluded that there was a rational basis for enactment of the filled milk laws involved in those cases because the products are indistinguishable by the ordinary consumer from natural milk and regardless of intent, "the evil of confusion remains." In Florida Lime and Avocado Growers v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248, a California statute was upheld which completely prohibited the sale of certain varieties of avocados grown in another State. The court stated: "* * * neither logic nor precedent invites any distinction between State regulations designed to keep unhealthful commodities off the grocer's shelves, and those designed to prevent the deception of consumers. * * * Nothing appearing in the record before us affords any ground for departure * * * from our consistent refusal to draw such a distinction." In the present case the imitation milk was to be distributed by a regular milk processing firm or dairy concern in the same type of container or carton used for milk that could easily confuse a purchaser in a self-service type store regardless of the label or writing on the container. "It is true that so far as the question of fraud is concerned the label of plaintiffs' cans tells the truth—but the consumer in many cases never sees it." Hebe Co. v. Shaw, supra, 248 U.S. at page 303, 39 S.Ct. at page 126.

In support of its contention that the Alabama statute is being applied to the plaintiff's imitation or substitute milk product in an unconstitutional manner in violation of the equal protection clause of the Fourteenth Amendment, the plaintiff introduced in evidence several brand name products which included "Metrecal", "Sego", "Nutrament", "Enfamil", and several other products denoted by their brand name, all of which appear to be special dietary food or beverage products. Plaintiff points out that

these products contain vegetable oils and non-fat milk solids, but these products are not dairy or milk products nor are they represented as such as they are beverages, food or drinks not in the category of a dairy product. These products contain other ingredients that make them markedly different and readily distinguishable from the plaintiff's imitation milk product. Plaintiff likewise asserts that for Alabama to authorize by special statute the sale of oleomargarine, an imitation butter, and mellorine, an imitation for ice cream, constitutes a discrimination violative of the equal protection clause.

■■■ Defendant's counsel in their brief call attention to the intent and meaning of the Alabama Dairy Products Law Article 13 (Sections 186–207), Title 2 of the Code of Alabama, in which the Alabama filled milk law appears, and other sections of the Alabama Code that govern the sale of foods, drinks and beverages which, according to their contention, govern the sale of products other than milk and dairy products and the construction and application of these statutes in relation to each other. We refrain from construing the intent, meaning and application of these statutes. We think, however, that it will suffice to point out that the plaintiff's contention involves a matter of legislative classification. As was held in Sage Stores Company v. State of Kansas ex rel. Mitchell, supra, in response to a similar contention that Kansas permitted the sale of skimmed milk, the court rules that it was "a matter of classification and the power of the legislature to classify is as broad as its power to prohibit. A violation of the Fourteenth Amendment in either case would depend upon whether there is any rational basis for the action by the legislature." The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard; also, one who assails the classification has the burden of showing that it is ar-

bitrary and does not rest upon any reasonable basis. Lindsley v. Natural Carbonic Gas Company, 220 U.S. 61, 31 S. Ct. 337, 55 L.Ed. 369.

■ Plaintiff's contention that to authorize the sale of oleomargarine and mellorine is an unconstitutional discrimination against its product was rejected by the United States Supreme Court in United States v. Carolene Products Company, supra. In that case it was argued that the Federal filled milk law unconstitutionally discriminated against plaintiff's product because it did not prohibit the sale of oleomargarine or other butter substitutes. In denying relief the court said, 304 U.S. at page 151, 58 S.Ct. at page 783:

> "The Fifth Amendment has no equal protection clause, and even that of the Fourteenth, applicable only to the states, does not compel their legislatures to prohibit all like evils, or none. A legislature may hit at an abuse which it has found, even though it has failed to strike at another. Central Lumber Co. v. [State of] South Dakota, 226 U.S. 157, 160, 33 S.Ct. 66, 57 L.Ed. 164; Miller v. Wilson, 236 U.S. 373, 384, 35 S.Ct. 342, 59 L.Ed. 628; Hall v. Geiger-Jones Co., 242 U.S. 539, 556, 37 S.Ct. 217, 61 L. Ed. 480; Farmers' & Merchants' Bank of Monroe, N. C. v. Federal Reserve Bank, 262 U.S. 649, 661, 43 S.Ct. 651, 67 L.Ed. 1157."

Furthermore, because of the obvious difference between plaintiff's product—an imitation or substitute for fresh fluid whole milk—and the several products pointed to by plaintiff, we hold that there is no unconstitutional discrimination involved or no discriminatory application of the Alabama filled milk law.

■ Our only choice in reaching a final decision in this case is to follow the cases previously decided by the United States Supreme Court which are contrary to each contention made by the plaintiff or to adopt the reasoning of some of the State court decisions which express

a contrary view. After considering plaintiff's contentions in connection with evidence before us, we see no reason to depart from the applicable law as heretofore decided by the Supreme Court of the United States. The burden of establishing the unconstitutionality of a statute is upon him who assails it, and we are of the opinion that the plaintiff in this case has not sustained such a burden to the extent that the statute here involved should be struck down. Accordingly, the relief sought by plaintiff must be denied.

It is, therefore, ordered, adjudged and decreed that the relief requested by the plaintiff be, and the same is hereby denied. Costs are taxed against the plaintiff.

JOHNSON, District Judge (dissenting):

I agree with the majority opinion that the Alabama "filled milk" statute, Title 2, § 189, Code of Alabama 1940 (Recomp. 1958) is constitutional on its face. It—and similar statutes—has historically served a good purpose in the legitimate exercise of the state's police power, but here, in the case now before us, the application of the Alabama statute is also in issue. The application of Alabama's "filled milk" statute to the product plaintiff seeks to market in the State of Alabama in such a manner as to completely prohibit the marketing of the product as opposed to reasonably regulating the product cannot be supported by either the evidence or the law. The evidence in this case is overwhelmingly clear that the artificial milk product—which uses cocoanut oil instead of butter fat—here sought to be marketed, is as wholesome and nutritious as fluid whole milk and that the container in which the plaintiff proposes to market its product in Alabama is clearly and unmistakably labeled "IMITATION MILK."

The majority concedes the existence of "State court decisions which express a contrary view," but the majority continues, in an effort to justify the *complete*

*denial* to plaintiff of the right to market its product in the State of Alabama, that "Our only choice in reaching a final decision in this case is to follow the cases previously decided by the United States Supreme Court which are contrary to each contention made by the plaintiff * * *." Evidently the basis for this conclusion by the majority of this Court is the two *Carolene* cases: United States v. Carolene Products Co., 304 U. S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938); Carolene Products Co. v. United States, 323 U.S. 18, 65 S.Ct. 1, 89 L. Ed. 15 (1944).

In the 1938 *Carolene* case, the application of a "filled milk" statute was upheld by the Supreme Court of the United States upon the basis of certain congressional findings that were made in 1923. These congressional findings were to the effect that the substitution of vegetable fat for butter fat was an injurious substitution. In referring to the congressional committee's reports, the Court noted that butter fat was singularly significant in that it contained certain vitamins which were not present in vegetable fat. The evidence in this case is without dispute that the product plaintiff now seeks to market in Alabama is as wholesome and nutritious—if not more so—than fluid whole milk. It is common knowledge that the rationale upon which the 1938 *Carolene* case was based will not—in 1968—justify the conclusion the majority reaches in this case.

The majority places even stronger reliance on the 1944 *Carolene* case to sustain the Alabama statute which is designed "to prevent deception, substitution, and possible fraud upon the consuming public," because, as stated by the majority of this Court, "In the present case the imitation milk was to be distributed by a regular processing firm or dairy concern in the same type of container or carton used for milk that could easily confuse a purchaser in a self-service type store regardless of the label or writing on the container." This reliance is equally misplaced. To me, it

is inconceivable that in this day and age the "ordinary consumer," who is experienced in examining and choosing from thousands of products, could or would be deceived by a product clearly labeled "IMITATION MILK" in bold black letters an inch high. In this connection, there is appended to this dissent a photograph of the carton the majority finds deceptive.

For the reasons stated, I do not believe either of the *Carolene* cases dictates or even warrants the conclusion reached by the majority in this case, the effect of which is to deny the plaintiff the right to market a wholesome, nutritious and nondeceptive product in the State of Alabama. The law is clear that the Constitution of the United States condemns the arbitrary classification by states without regard to any relationship of such classification to the subject matter. It is basic to our law that such arbitrary classification violates the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L. Ed. 220 (1886); Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918); Goesaert v. Cleary, 335 U.S. 464, 69 S. Ct. 198, 93 L.Ed. 163 (1949); Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563, 569 (1955); Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966). The reliance by the majority upon Sage Stores Company v. State of Kansas ex rel. Mitchell, 323 U.S. 32, 65 S.Ct. 9, 89 L. Ed. 25, also decided twenty-four years ago, as authority for the conclusion that the Alabama statute does not deny "equal protection" is misplaced. In the *Sage* case, the Supreme Court held that the matter of whether or not the Kansas "filled milk statute" denied equal protection was a matter for Kansas to determine. The Supreme Court declined to find from the facts presented in the

*Sage* case that there was no rational basis for applying the Kansas filled milk law to the product then sought to be marketed in the State of Kansas, because it had been determined, as a factual matter, in the lower court that the product sought to be marketed in Kansas was indistinguishable by the ordinary consumer from natural milk and that "the evil of confusion remains."

In the case now before this Court, the plaintiff offered (as it did to the state authorities before this case was instituted) to make whatever changes the state authorities desired in order to eliminate the possibility of the ordinary consumer's being confused and deceived. The Alabama authorities did not see fit to make any suggested changes for this purpose; instead, they merely altogether prohibited the marketing of the product. Such a decision reflects the Alabama authorities were not interested in regulating, under the police power of the State of Alabama, plaintiff's product. Thus, the opinion of the majority of this Court has the effect of placing a stamp of approval upon the use of a "filled milk" statute to absolutely prohibit rather than to reasonably regulate. This reasoning if upheld would sanction an absolute prohibition on the sale of horse meat upon the theory that the consumer might buy it and serve it as beef when it was plainly labeled "Horse Meat." Similarly, it would prohibit the sale of all artificial fabrics that had the appearance of cotton or wool, even though they were labeled "Nylon" or "Dacron," or carried names of other artificial fibers, upon the theory that the ordinary consumer might confuse them with cotton or wool products. To sustain its position, the majority relies upon the same arguments that were used for years to prohibit the sale of oleomargarine. On this point of deception, the legal principles that have been used in misbranding cases should control. In 62 Cases, More or Less, Each Containing Six Jars of Jam v. United States, 340 U.S. 593, 71 S.Ct. 515, 95 L.Ed. 566, the United States had sought to condemn as misbranded a product labeled as "imitation jam" because it did not meet the specifications for jam. The Supreme Court held that the product was not misbranded since it was uneqivocally labeled as an imitation. In writing the opinion, Mr. Justice Frankfurter stated:

> "A product so labeled is described with precise accuracy. It neither conveys any ambiguity nor emanates any untrue innuendo  *  *  *."

The action of the State of Alabama in absolutely prohibiting the marketing of plaintiff's product in the state, through the guise of administering the Alabama "filled milk" statute, is arbitrary, capricious, discriminatory, and for these reasons violative of plaintiff's constitutional rights as guaranteed by the Fourteenth Amendment to the Constitution of the United States.

Such an enforcement of a statute, and the stamp of approval placed upon it by the majority of this Court, is consistent with the theory of government such as we had in this country under the Articles of Confederation when the United States were "united" in name only and during that period of this country's history when, for any reason that served local interests, the thirteen states were allowed to interfere with commerce to prevent progress and the growth and development of the country. Such practice is untenable under our present system. I must emphasize that the exercise of police power by a state through the privilege of classifying must not be unduly interfered with; it must always be kept in mind that such classifications are presumed to be valid and the burden rightly remains on him who would attack a statute, or the application of a statute, to demonstrate its unconstitutionality. However, the burden placed by the majority of this Court upon the plaintiff is far too heavy to be consistent with our federal system of government. Quality Food Products, Inc., met and overcame the burden of demonstrating that no rational basis, consistent

with the Constitution of the United States, exists for the classification of its product that will justify the absolute prohibition of marketing such product in the State of Alabama.

I therefore dissent.

## APPENDIX

RIVES, Circuit Judge (concurring):

I heartily concur with Judge ALL-GOOD's able opinion for the court, but, in the light of Judge JOHNSON's vigorous dissenting opinion, I would add a few words.

First, on the facts, our dissenting brother says at one point that the evidence is "overwhelmingly clear" and at another that it is "without dispute" that the product sought to be marketed "is as wholesome and nutritious—if not more so—than fluid whole milk." In my opinion the evidence does not permit any such an extreme finding.[1] I would not malign the product, and am happy that the evidence does go so far as to show that it contains nothing deleterious to health. On the other hand, in vitamin content the product may not be uniform. Mr. Fritz, the General Manager and Vice President of "Farmer's Daughter," which supplies the product to the plaintiff, testified that it advised the dairies to add vitamins. Without constant checking, the State Agriculture Department cannot know whether that advice has been followed as to any particular lot. Mr. Speizer of the plaintiff's food testing laboratory (or that of "Farmer's Daughter") conceded that the product is to some extent subject to double pasteurization which, I understand, may destroy some food value. Dr. L. B. Roberts, chemist of the State food and drug laboratories, testified that there is nothing in the product harmful to health, but that his analysis of samples did not justify the claims of the promoters as to protein, lactone, calcium or calories. For example, the claim was that the product contained 20% fewer calories than natural whole milk, while his analysis showed the percentage to be about 5%.

Mrs. Leif Cannon, who holds a B.S. and M.A. degree from Auburn University, and is a qualified nutritions expert, testified that milk is most important to new-born babies and to growing children, that the low calorie content of this product made it undesirable for that important class of consumers, that vitamin K was not added to the product and it was deficient in vitamin C and in linolenic acid.

Our dissenting brother is equally positive on the question of possible confusion in the distribution of the product. To him "it is inconceivable that in this day and age the 'ordinary consumer,' who is experinced in examining and choosing from thousands of products, could or would be deceived by a product clearly labeled 'IMITATION MILK' in bold black letters an inch high." That was not the testimony of Mrs. Cannon who was familiar with the purchasing habits of young mothers. She testified that the probability is that many of them will select the product from its place on the refrigeration shelf of the grocery store without even bothering to read the label. There is no testimony to justify a finding by this Court that the habits of consumers have changed so radically since Mr. Justice Homes said for the Supreme Court:

> "It is true that so far as the question of fraud is concerned the label on the plaintiffs' cans tells the truth—but the consumer in many cases never sees it."

Hebe Co. v. Shaw, 1919, 248 U.S. 297, 303, 39 S.Ct. 125, 126, 63 L.Ed. 255.

Indeed there is no assurance that the product will always be marketed in the original container. If the price justifies, some restaurants and soda fountains may be expected to sell the product in the place of whole milk, just as oleomargarine is today distributed in lieu of butter. All of the witnesses agreed that the product looks like milk, tastes like milk, and that the ordinary consumer cannot tell the difference. The State has established elaborate and expensive machinery for assuring the purity and

---

[1] My discussion of the evidence represents simply my recollection as checked against my notes taken during the trial. Unfortunately, the parties have not seen fit to pay for having the testimony transcribed.

grade of natural milk. Will this court make it necessary for the State to furnish like administrative procedures for testing imitation milk?

The merits of this particular product have legal significance only insofar as they affect the comparison of the two classes, that is, imitation milk with whole milk and whether in their distribution consumers may probably be confused. Even the comparison of the classes need not be determined by this court with any exactness. The question is whether they are debatable to an extent that permits the legislature's classification. As Mr. Justice Holmes commented in Hebe Co. v. Shaw, supra, 248 U.S. at 303–304, 39 S.Ct. at 126:

> "If the character or effect of the article as intended to be used 'be debatable, the legislature is entitled to its own judgment, and that judgment is not to be superseded by the verdict of a jury,' or, we may add, by the personal opinion of judges, 'upon the issue which the legislature has decided.' Price v. [State of] Illinois, 238 U.S. 446, 452, 35 S.Ct. 892, 894, (59 L.Ed. 1400) ; Rast v. Van Deman & Lewis Co., 240 U.S. 342, 357, 36 Sup.Ct. 370, 60 L.Ed. 679." [2]

Our dissenting brother criticizes the State authorities for their lack of interest in regulating the plaintiff's product when he says:

> "In the case now before this Court, the plaintiff offered (as it did to the state authorities before this case was instituted) to make whatever changes the state authorities desired in order to eliminate the possibility of the ordinary consumer's being confused and deceived. The Alabama authorities did not see fit to make any suggested changes for this purpose; instead, they merely altogether prohibited the marketing of the product. Such a decision reflects the Alabama authorities were not interested in regulating, under the police power of the State of Alabama, plaintiff's prod-

uct. Thus, the opinion of the majority of this Court has the effect of placing a stamp of approval upon the use of a 'filled milk' statute to absolutely prohibit rather than to reasonably regulate."

With deference, I submit that such criticism shows a total misconception of the very definite Alabama statute which reads as follows:

> "§ 189. *Adding or blending fat or oil with milk or cream.*—No person himself or by his servant or agent shall for the purpose of sale or exchange, add any fat or oil other than milk fat to, or blend or compound the same with, any milk, cream or skimmed milk, whether or not condensed, evaporated, concentrated, powdered, dried or desiccated, nor shall any person himself or by his servant or agent sell, any milk, cream or skimmed milk in any of the aforesaid forms to which has been added or with which has been blended or compounded any fat or oil other than milk fat."

Code of Ala., Title 2, § 189. That statute does not merely regulate but, in clear and unmistakable language, it forbids or prohibits the sale of any milk "to which has been added or with which has been blended or compounded any fat or oil other than milk fat." The plaintiff concedes, as it must, that its product comes within that class. There the case should end. Neither the State authorities nor the courts have any power or authority to re-write the statute so as to except the plaintiff's product.

Our dissenting brother concedes that the Alabama "filled milk" statute is "constitutional on its face" but argues that in its "application" it must be held to except the plaintiff's product because that product is in fact "as wholesome and nutritious as fluid whole milk" and in its distribution is not confusing to the consuming public. If the plaintiff attacked only the application of the statute to the facts in question, a three-

---

2. See also 35 Am.Jur.2nd, Food § 6, p. 315, notes 1 and 2, and cases there cited.

judge court need not be convened. McGuire v. Sadler, 5th Cir. 1964, 337 F.2d 902, 906. The plaintiff recognized that the question is not one of "application" but goes to the validity of the statute on its face. The question is simply whether that statute is based upon an arbitrary and constitutionally impermissible classification.

Conceding arguendo that plaintiff's product is both as wholesome and nutritious as natural whole milk and that its distribution is not confusing to the consuming public—though both of these matters are in fact debatable—it is nonetheless true that the Supreme Court has repeatedly held that a court has no power to construe or amend a plain and unambiguous statute, valid on its face, so as to except such an innocent product. In Purity Extract & Tonic Co. v. Lynch, 1912, 226 U.S. 192, 201, 204, 33 S.Ct. 44, 57 L.Ed. 184, Mr. Justice Hughes speaking for the Court said:

"It is also well established that, when a State exerting its recognized authority undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective. It does not follow that because a transaction separately considered is innocuous it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the government. * * *

* * * * * * *

"The statute establishes its own category. The question in this court is whether the legislature had power to establish it. The existence of this power, as the authorities we have cited abundantly demonstrate, is not to be denied simply because some innocent articles or transactions may be found within the proscribed class."

Mr. Justice Brandeis, for the Court, elaborated upon this concept in Jacob Ruppert, Inc. v. Caffey, 1920, 251 U.S. 264, 284–299, 40 S.Ct. 141, 64 L.Ed. 260. Again in Queenside Hills Realty Co. v. Saxl, 1946, 328 U.S. 80, 83, 66 S.Ct. 850, 90 L.Ed. 1096, Mr. Justice Douglas speaking for the Court said:

"Yet a statute may be sustained though some of the objects affected by it may be wholly innocent. Purity Extract & Tonic Co. v. Lynch, 226 U.S. 192, 204, 33 S.Ct. 44, 57 L.Ed. 184. The question of validity turns on the power of the legislature to deal with the prescribed class. That power plainly exists here."

Compare Dean Milk Co. v. City of Madison, 1951, 340 U.S. 349, 354, 71 S.Ct. 295, 95 L.Ed. 329.[3]

One of the relevant circumstances which permits the inclusion of an innocent article within a prohibited class is the administrative difficulty of excluding the article from the class. United States v. Carolene Products Co., 1938, 304 U.S. 144, 154, 58 S.Ct. 778, 82 L.Ed. 1234. As there indicated, that consideration is peculiarly applicable in determining the validity of a "filled milk" statute.

The federal statute is couched in prohibitory language similar to that of the Alabama statute:

" § 62. *Same; manufacture, shipment, or delivery for shipment in interstate or foreign commerce prohibited*

"It is declared that filled milk, as defined in section 61 of this title, is an adulterated article of food, injurious to the public health, and its sale constitutes a fraud upon the public. It shall be unlawful for any person to manufacture within any Territory or possession, or within the District of Columbia, or to ship or deliver for shipment in interstate or foreign commerce, any filled milk." 21 U.S.C.A.

---

3. In other areas, such as those involving first amendment rights, less administrative leeway may be allowed. Shelton v.

Tucker, 1960, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231.

362

Without deviation, the Supreme Court and the lower federal courts have upheld the constitutionality of the federal statute. The cases are collected in an annotation in 155 A.L.R. 1407 in support of the text: "The constitutionality of the Federal Filled Milk Act has been repeatedly upheld." Similarly as to state statutes the annotation says: "Many states have adopted filled milk statutes similar to the Federal act, and in nearly all of the cases in which the question has arisen their constitutionality has been upheld." 155 A.L.R. 1408. Supporting that text are collected federal cases and cases from the States of Florida, Kansas, Kentucky, Missouri, Ohio, Pennsylvania and Wisconsin. The note cites cases from only three states—Illinois, Michigan and Nebraska—as holding to the contrary, 155 A.L.R. 1411, though perhaps Arizona should be added. See 36A C.J.S. Food § 6(4), p. 803, n. 72. See also 35 Am.Jr. 2nd, Food § 52, pp. 847, 848. The undeniable fact is that the great weight of authority supports our majority decision. In my opinion, the plaintiff has failed to show that the Alabama filled milk statute is unconstitutional. I therefore concur in the judgment for the defendant.